[606 NYS2d 836]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant, v KEVIN REILLY, Appellant-Respondent.

Third Department, January 20, 1994

96

APPEARANCES OF COUNSEL

*Charles Guttman,* Ithaca, for appellant-respondent.

*George M. Dentes, District Attorney* of Tompkins County, Ithaca, for respondent-appellant.

## OPINION OF THE COURT

MERCURE, J.

In September 1991, Scott Ferris and Daniel Drew, two deputies from the Tompkins County Sheriff's Department, entered a 10-acre parcel of land owned by defendant. Ferris and Drew gained access to the property by walking over an adjacent field, following the fence along defendant's east line more than 1,400 feet and into a heavily wooded area north of defendant's property, and then traversing a break in the fence line at the rear of defendant's property. They then walked out of the woods and across defendant's property several hundred feet to a cottage behind defendant's residence, where they sniffed the vent of an air conditioner and smelled marihuana. Ferris and Drew proceeded to a "small wooded" area near defendant's residence where they found growing marihuana plants. They thereafter left the property and applied for a search warrant for defendant's premises. Upon executing the warrant, officers from the Sheriff's Department discovered a quantity of marihuana plants, and defendant was arrested and subsequently indicted on charges of criminal possession of marihuana in the first degree and unlicensed growing of marihuana.

Following a hearing, County Court denied defendant's motion to suppress the evidence seized through the search warrant. Defendant then elected to plead guilty to the indictment. In exchange for his plea, defendant was promised that the sentence would not be more than 1 to 3 years' imprisonment. Before sentence was imposed, however, the Court of Appeals decided *People v Scott* (79 NY2d 474, *revg* 169 AD2d 1023), which addressed the application of the "open fields" doctrine *(see, Oliver v United States,* 466 US 170) under the State Constitution. Relying on *Scott,* defendant moved to vacate his guilty plea and for reargument of his suppression motion. County Court adhered to its original denial of defendant's suppression motion, finding that the deputies acted lawfully even under *Scott.* Defendant was then sentenced, in September 1992, to an indeterminate prison term of 1 to 3 years on the criminal possession of marihuana in the first degree

conviction and a lesser determinate term on his conviction for unlicensed growing of marihuana. Defendant appeals from this judgment.

In October 1992, defendant moved to vacate the judgment and requested to be resentenced to a lesser term on the ground that the District Attorney did not inform defendant or County Court that the District Attorney had advised the United States Attorney of defendant's plea, leading to Federal forfeiture proceedings against defendant's property. County Court granted defendant's motion, finding that the People's failure to so inform defendant and County Court resulted in a sentence that was "unauthorized, illegally imposed or otherwise invalid as a matter of law" (CPL 440.20 [1]). In June 1993, County Court resentenced defendant to concurrent determinate prison terms of six months. The People appeal from County Court's order granting defendant's motion to set aside the original sentence and from the June 1993 judgment resentencing defendant. Defendant cross-appeals from the June 1993 judgment.

Initially, we reject defendant's argument that the search warrant was based on material misrepresentations concerning the character of defendant's property and the extent of the deputies' invasion of the premises. Although Ferris' testimony at the suppression hearing deviated slightly from the facts revealed on his search warrant application, the differences were not so egregious as to warrant the conclusion that Ferris acted in reckless disregard of the truth *(see, Franks v Delaware,* 438 US 154; *People v Greco,* 187 AD2d 151, 158, *lv denied* 81 NY2d 1073).

■ We also reject defendant's contention that Ferris and Drew unlawfully entered the curtilage of his residence to observe and smell marihuana plants. Curtilage is generally defined as an area that is related to the "intimate activities of the home" *(People v Reynolds,* 71 NY2d 552, 558; *see, United States v Dunn,* 480 US 294, 300; *Oliver v United States,* 466 US 170, 180, *supra)* and is entitled to constitutional protection under both State and Federal law *(see, United States v Dunn, supra; People v Reynolds, supra;* 1 LaFave, Search and Seizure § 2.4 [a] [2d ed]). The United States Supreme Court has identified four relevant factors that are "useful analytical tools" to the degree that they bear upon the central question—whether the area in issue is intimately tied to the home itself: (1) the proximity of the area searched to the home, (2) whether the area is included within an enclosure surrounding the home,

(3) the use to which the area is put, and (4) the visibility of the area to the public *(United States v Dunn, supra,* at 301).

Applying these factors, we conclude that County Court did not err in finding that defendant's cottage, the area immediately surrounding it and the unmown area where the patches of marihuana were observed, all lay outside the curtilage of defendant's residence *(see, United States v Benish,* 5 F3d 20). First, the record demonstrates that the cottage was located about 425 feet from defendant's residence, and the unmown area of brush and small trees where the deputies observed patches of growing marihuana was 160 to 180 feet from the house. Here, as in *Dunn,* these substantial distances support no inference that either the cottage or the area of brush and small trees should be treated as an adjunct of the house. Second, the cottage was itself within an area of mown grass and landscaped surroundings, with a pond, a gazebo and lawn furniture nearby. It is significant that there was no fence surrounding the residence and that an unmown area of brush and small trees separated the residence, its yard and outbuildings from the cottage.

Third, although the deputies did not possess "objective data indicating that the [cottage] was not being used for intimate activities of the home", found by the Supreme Court to be an "especially significant" factor *(United States v Dunn, supra,* at 302; *cf., supra,* at 305 [Scalia, J., concurring in part]), and defendant testified at the suppression hearing that the pond and the adjacent area were used for swimming and "backyard" activities, such as barbecuing and lawn games, the cottage was vacant and was emitting a strong odor of marihuana. Furthermore, it contained marihuana plants, grow lights, hoses for irrigation and a timer to control the lights and air conditioner. Outside, 10 to 15 feet away, was a four-foot-high manure pile. When considered together, these facts indicated to the deputies that the use to which the cottage was being put "could not fairly be characterized as so associated with the activities and privacies of domestic life" that they should have deemed the cottage as part of defendant's home *(supra,* at 303). Fourth, although nothing in the record suggests that the cottage is readily observable from locations accessible to the public, given that it is about 750 feet from the road, defendant did not erect any fences to prevent persons from observing the cottage and the area around it.

Turning to defendant's next contention, that his suppression motion should have been granted pursuant to the Court of

Appeals holding in *People v Scott* (79 NY2d 474, *supra*), we first address the question of whether *Scott,* which was decided after defendant pleaded guilty, applies to this case. Prior to *Scott,* this Court adhered to the "open fields" doctrine as applied by the United States Supreme Court *(see, People v Scott,* 169 AD2d 1023, *revd* 79 NY2d 474, *supra; People v Reynolds,* 124 AD2d 356, *affd* 71 NY2d 552, *supra).* In *Scott,* the Court of Appeals rejected the Supreme Court's holding in *Oliver v United States* (466 US 170, *supra)* and held, under the State Constitution, that if a citizen has posted "No Trespassing" signs or taken "some other means" to indicate unmistakably that entry is not permitted, that citizen has a reasonable expectation of privacy in his or her property such that warrantless entry is impermissible, absent exigent circumstances or some other exception to the warrant requirement *(People v Scott, supra,* at 491).

The Court of Appeals in *People v Mitchell* (80 NY2d 519) reaffirmed the three-factor test for determining the retroactivity of a new rule of criminal procedure previously announced in *People v Pepper* (53 NY2d 213, *cert denied* 454 US 967). Thus, we must consider (1) the purpose served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of the retroactive application of the new rule *(see, People v Mitchell, supra,* at 525-526, 528; *People v Pepper, supra,* at 220). Upon consideration of these factors, we conclude that *People v Scott (supra)* should be given retroactive effect to this case, which is pending on direct appeal. First, although the rule announced in *Scott* does not affect the fact-finding process *(see, People v Mitchell, supra,* at 528; *People v Pepper, supra,* at 221), it does protect important constitutional rights. Second, although law enforcement officials may have arguably relied on the "open fields" doctrine as defined by Federal law, the rule set forth in *People v Scott (supra)* was not a "dramatic shift away from customary and established procedure" at the State level *(People v Mitchell, supra,* at 525). The *Scott* decision was arguably "foreshadowed" *(People v Pepper, supra,* at 222) by *People v Reynolds* (71 NY2d 552, *supra).* In fact, in *Scott,* the Court of Appeals relied heavily on cases decided prior to *Oliver v United States (supra),* notably *Katz v United States* (389 US 347; *People v Scott, supra,* at 489-490). Third, there is no concern here that retroactive application of *Scott* will result in large-scale reversals of convictions or otherwise unduly burden the judicial system *(see, People v Favor,* 82 NY2d 254, 266).

■ The question then is whether, pursuant to *People v Scott (supra)*, defendant took sufficient steps to warrant constitutional protection for his property. Although defendant did not have "No Trespassing" signs posted, the property was bounded on the south by the road, on the north by heavy woods and a low wire fence and on the east and west by a pretension steel fence that appeared electrified. Additionally, as noted, the cottage was surrounded by a well-mown lawn, lines of shrubs, a pond containing a dock and diving board, as well as a gazebo and patio. Even if Ferris and Drew crossed no fencing, which County Court found to be "intermittent and derelict" along the northern boundary, they clearly walked several hundred feet along defendant's fenced boundary lines to reach the point of entry. Moreover, they walked several hundred feet over defendant's well-landscaped property, past the pond, gazebo and patio before reaching the cottage. We hold that in these circumstances, where the property is substantially enclosed on all four sides, well-mown and landscaped, that the landowner has "indicate[d] * * * the expectation that * * * privacy rights will be respected" *(supra,* at 491). Because the search warrant application was based on observations made after an illegal entry, all of the evidence obtained from the search warrant execution should be suppressed as the fruit of the illegal entry *(see, Wong Sun v United States,* 371 US 471).

CARDONA, P. J., WHITE, CASEY and WEISS, JJ., concur.

Ordered that the judgments are reversed, on the law, motion to suppress tangible evidence granted and indictment dismissed.

Ordered that the appeal from the order is dismissed, as academic.