[853 NE2d 224, 819 NYS2d 855]

The People of the State of New York, Respondent, v Gina Mancini, Appellant.

Argued June 7, 2006; decided July 5, 2006

## APPEARANCES OF COUNSEL

*Legal Aid Bureau of Buffalo, Inc.*, Buffalo (*Robert L. Kemp, David C. Shopp* and *Barbara J. Davies* of counsel), for appellant.

*Frank J. Clark, District Attorney*, Buffalo (*Michael L. McCabe* and *J. Michael Marion* of counsel), for respondent.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be modified by reducing defendant's conviction of depraved indifference murder (Penal Law § 125.25 [2]) to manslaughter in the second degree (Penal Law § 125.15 [1]), and by remitting the case to Supreme Court for resentencing and, as so modified, affirmed. Defendant did not commit depraved indifference murder within the meaning of the statute (*see People v Suarez*, 6 NY3d 202, 212-214 [2005]). We disagree with the contention of our dissenting colleague that by leaving the victim to die, as here, defendant committed depraved indifference murder. That test would sweep in the vast number of homicides where the killers do not linger with their victims, awaiting aid (*see id.* at 209 n 3). "[I]rrespective of what the actor does or does not do *after inflicting the fatal injury*, depraved indifference murder is not made out unless the core statutory requirement of depraved indifference is established" (*id.* at 210) (emphasis added).

GRAFFEO, J. (dissenting). I respectfully dissent and would hold that there was sufficient evidence to support defendant's conviction of depraved indifference murder.

To find a defendant guilty of depraved indifference murder, the jury must determine that the defendant recklessly engaged in conduct that created a grave risk of death under circumstances evincing a depraved indifference to human life and that the defendant's actions caused the victim's death (*see* Penal Law § 125.25 [2]; *People v Suarez*, 6 NY3d 202, 207 [2005]). In this appeal, defendant does not dispute that the People sufficiently proved that she acted with a reckless state of mind. Instead, her challenge is limited to the sufficiency of the evi-

dence that the murder was committed under circumstances evincing a depraved indifference to human life.

The jury was not required to credit defendant's version of events but, assuming it did, there was sufficient evidence of depraved indifference murder. According to defendant's trial testimony, after agreeing to a sexual encounter with a 75-year-old man for a specified sum of money and accompanying him to his home, the pair got into the shower. When the man told defendant that he would pay only half of the agreed-upon price, defendant refused to have sex with him. The man responded by grabbing defendant from behind, which led her to believe that she was about to be sexually assaulted. A struggle ensued.

Defendant testified that eventually she got out of the shower, picked up a toilet tank lid and swung the lid in the direction of the man, who had slipped and was now sitting in the tub, striking the lid on the side of the shower. Defendant claimed she swung the lid once more, hitting the man directly on the left side of his head. The medical experts at the trial opined that the blow from the tank lid rendered the victim unconscious, inflicted a major laceration to his scalp and severely fractured the skull, causing it to become depressed into his brain. The jury heard that the victim may have lived (albeit in an unconscious state) for up to an hour after being struck.

Notwithstanding the victim's shattered skull, profuse bleeding and motionless body, defendant told the jury that she "did not think he was hurt that bad," "thought he would need stitches but . . . [that] he would be okay" and that he would "eventually . . . get up and probably call the police himself." This testimony, coupled with the evidence from the medical experts and defendant's declarations that she did not intend to kill the victim, proved that defendant was utterly indifferent to the grave risk of death inherent in her actions. In addition, to the extent there was any possibility that the victim might have lived, defendant admitted that she locked the doors to the bathroom and garage, which would have impeded any emergency medical assistance from being rendered to the victim. And although defendant claimed she was interested in quickly departing the premises, she took time to wipe the blood off the toilet tank lid before undertaking a search for the victim's car keys. Viewing these facts objectively, and in the light most favorable to the People, as we must (*see People v Calabria*, 3 NY3d 80, 81 [2004]), a reasonable juror could conclude that defendant created such an exceptionally high, grave risk of death, and so

callously and wantonly disregarded the mortal danger she caused that the circumstances evinced a depraved indifference to the victim's life warranting a conviction of murder rather than manslaughter (*cf. People v Sanchez*, 98 NY2d 373, 384 [2002]).

I recognize, of course, that a majority of this Court in *People v Suarez* (6 NY3d 202 [2005]) departed from the *Sanchez* formulation of depraved indifference murder by restricting application of Penal Law § 125.25 (2) in one-on-one killings to several categories, including abandonment of a helpless victim, and brutal and prolonged torture. Although I continue to disagree with *Suarez* (*see id.* at 219-228 [Graffeo, J., concurring in part and dissenting in part]), nevertheless, defendant's actions in this case fit within one of the "rare circumstances" identified in *Suarez* (*id.* at 212). As the Court explained in *Suarez*, "when the defendant intends neither to seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable victim in circumstances where the victim is highly likely to die, the defendant's utter callousness to the victim's mortal plight— arising from a situation created by the defendant—properly establishes depraved indifference murder" (*id.*).

Here, defendant concedes that there is sufficient evidence that she did not intend to kill the victim but instead acted recklessly. It also cannot be seriously disputed that the victim's "mortal plight" (*id.*) arose from defendant's act of shattering his skull with a heavy object. As a result of defendant's conduct, the victim was rendered "helpless and vulnerable," and was "highly likely to die" (*id.*). Defendant then abandoned the victim and impeded the possibility of assistance by locking the doors to the garage and bathroom. These facts, in my view, are comparable to the scenarios presented in *People v Kibbe* (35 NY2d 407 [1974] [forcing an intoxicated person out of a car onto a dark, snowy road]) and *People v Mills* (1 NY3d 269 [2003] [pushing a 12-year-old boy into the water and, after that death-inducing conduct, abandoning him by walking away]), which were identified as classic "abandonment of a helpless victim" cases in the *Suarez* decision (*see* 6 NY3d at 212). Thus, under the reasoning of *Suarez*, I believe defendant's murder conviction should be upheld.*

---

* Today's majority decision in *People v Feingold* (7 NY3d 288 [2006] [decided today]), from which I have dissented, does not require a reversal in this case because defendant's testimony and the crime scene evidence provided ample

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, READ and R.S. SMITH concur; Judge GRAFFEO dissents and votes to affirm in an opinion.

Order modified by reducing defendant's conviction of murder in the second degree to manslaughter in the second degree and remitting to Supreme Court, Erie County, for resentencing and, as so modified, affirmed, in a memorandum.

---

proof for the jury to conclude that defendant had an "utter disregard" for the victim's life (*id.*) and thereby evinced a depravedly indifferent state of mind.