■ The People of the State of New York, Respondent, v Raymond C. George, Appellant. [840 NYS2d 662]—

Peters, J. Appeal from a judgment of the County Court of Schoharie County (Bartlett III, J.), rendered January 13, 2003, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant was charged with murder in the second degree, arising out of an incident on August 11, 2001 where he shot the victim in the abdomen during an altercation on defendant's front lawn. Upon the close of evidence, County Court submitted to the jury the charge of manslaughter in the second degree, as requested by the People, the charge of criminally negligent homicide, as requested by defendant, and the charge of murder in the second degree. The jury convicted defendant of the crime of murder in the second degree and County Court imposed a sentence of 25 years to life.

Defendant contends that his conviction was based upon legally insufficient evidence and was against the weight of the evidence. He asserts that the circumstances surrounding the shooting do not come within the narrow class of factual settings evincing a depraved indifference to human life. The People argue, in reliance upon *Policano v Herbert* (7 NY3d 588 [2006]), that because defendant was convicted in January 2003, six months prior to the change of law initiated by *People v Hafeez* (100 NY2d 253 [2003]), recent changes regarding depraved indifference murder do not apply to this case on direct appeal. We disagree.

In *Policano*, the Court of Appeals expressly held that the gradual change in the law enunciated in the line of cases following its decision in *People v Sanchez* (98 NY2d 373 [2002]) does not apply retroactively to convictions that became final before the law began to change in 2003 with *Hafeez*. Although the Court in *Policano* never explicitly addressed the issue of whether the post-*Sanchez* case law would apply to nonfinal cases on direct appeal, it implicitly recognized, contrary to the position taken by the dissent, that the current depraved indifference case law *would* apply to defendants whose convictions became final after the law had changed, sometime between *Hafeez* in 2003 and its decision in *People v Feingold* (7 NY3d 288 [2006]; *see Policano v Herbert, supra* at 602-604). Indeed, the only question left open by *Policano* in this regard was exactly when, between 2003 and 2006, the Court of Appeals "effectively passed the point of no return—the limit beyond which, hard as [it] may have tried, it

was simply not possible to reconcile [the] developing case law with [*People v*] *Register*[, 60 NY2d 270 (1983), *cert denied* 466 US 953 (1984)] and *Sanchez*"—such that the new law became applicable to cases that had not become final at that time (*Policano v Herbert, supra* at 603). Moreover, the Court of Appeals has consistently applied the current law to direct appeals involving depraved indifference, even where, as here, defendant's conviction preceded the change of law initiated on June 10, 2003 in *Hafeez* (*see e.g. People v Swinton*, 7 NY3d 776 [2006] [May 2003 conviction]; *People v Mancini*, 7 NY3d 767 [2006] [October 2002 conviction]; *People v Atkinson* 7 NY3d 765 [2006] [February 2002 conviction]). So too have the other Departments (*see e.g. People v Dickerson*, 42 AD3d 228 [2007] [August 2002 conviction]; *People v Garrison*, 39 AD3d 1138 [2007] [January 2003 conviction]; *People v Ziminski*, 34 AD3d 507 [2006] [November 1999 conviction]; *People v Campbell*, 33 AD3d 716 [2006], *lv denied* 8 NY3d 879 [2007] [April 2003 conviction]). Thus, inasmuch as defendant's conviction is on direct appeal to this Court and, as such, is not a final conviction, we are constrained to apply the current state of the law regarding depraved indifference murder.

Addressing the sufficiency of the evidence, testimony showed that on the day of the incident, defendant and his nephew were conducting a yard sale at defendant's home. At approximately 1:00 P.M., defendant was discussing a sale with Peter Troffa, a neighbor, when a car slowed down in front of defendant's home. Defendant approached the car and began taking photos of it and its occupants, the victim and defendant's estranged wife. After defendant and the victim exchanged words, the victim got out of the car and began chasing defendant toward the rear of the house. When the victim realized that he could no longer keep up with defendant, he stopped. According to Troffa and defendant's nephew, defendant called to his nephew to get a gun. Thinking that he was going to use it to scare the victim, defendant's nephew retrieved a loaded rifle from the garage. Viewing the rifle, the victim picked up a metal pole and began to choke the nephew. Defendant grabbed the rifle from his nephew's hand and the victim released his hold on the nephew.

What transpired thereafter is in dispute. According to the nephew, he immediately fell towards the left and saw the victim turn toward defendant. He then heard a bang and saw defendant holding the rifle by his waist. Troffa, standing approximately 30 feet away, testified that after defendant took the rifle from his nephew, he backed up about 10 steps, held the rifle by his hip and shot the victim. The estranged wife testified

that when the victim noticed defendant holding the rifle by his hip, he dropped the pole and started to back away. When he was approximately six feet from defendant, he was shot. She, as well as the other witnesses, never saw defendant's hands on the trigger. Defendant, on the other hand, testified that when he grabbed the rifle from his nephew, he tripped. He stated that the rifle either slid down his leg or banged against his hip, causing it to discharge accidentally. He also asserted that during the moment when he was fumbling with the rifle, the victim was coming towards him with his arm raised in an attempt to hit him with the pole. No other testimony supported this contention.

Defendant maintains that this evidence does not support his conviction of depraved indifference murder since the facts do not prove that "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] the death of another person" (Penal Law § 125.25 [2]; see People v Suarez, 6 NY3d 202, 208 [2005]; People v Payne, 3 NY3d 266, 270 [2004]). As the Court of Appeals has recently pronounced, "the statutory provision that a defendant act '[u]nder circumstances evincing a depraved indifference to human life' constitutes an additional requirement of the crime— beyond mere recklessness and risk" (People v Suarez, supra at 214). As it is "a culpable mental state" (People v Feingold, 7 NY3d 288, 294 [2006], supra; see Policano v Herbert, 7 NY3d 588, 602-603 [2006], supra), rather than an objective assessment of the risks involved (see Policano v Herbert, supra at 603; People v Feingold, supra at 294), it necessitates that defendant possess a heightened level of "wanton cruelty, brutality or callousness" (People v Suarez, supra at 213). Recognizing that "depraved indifference murder properly applies only to a small, and finite, category of cases where the conduct is at least as morally reprehensible as intentional murder" (id. at 207), it " 'may not be properly charged in the overwhelming majority of homicides' " (id., quoting People v Payne, supra at 270); "rarely can depraved indifference murder apply to the killing of a single victim" (People v Feingold, supra at 294; see People v Suarez, supra at 212-213). Accordingly, "if a defendant fatally shoots the intended victim once, it could be murder, manslaughter in the first or second degree or criminal negligence (or self-defense), but not depraved indifference murder" (People v Payne, supra at 272).

Hence, while we agree that the People presented legally sufficient evidence to show that defendant acted recklessly by

engaging in conduct creating a grave risk of death to another (*see* Penal Law § 125.25 [2]), the critical statutory element that separates second degree manslaughter from depraved indifference murder—defendant's underlying depraved indifference— was not sufficiently shown, despite the extensive evidence that he prevented prompt calls to 911 after the shooting and told the EMT that he would "shoot any son of a bitch who messes with [his] wife." If even leaving a victim to die has been found insufficient to constitute depraved indifference murder (*see People v Mancini*, 7 NY3d 767, 768 [2006], *supra*), we are constrained to conclude that defendant's conviction on that charge is not properly grounded here.

We are, however, empowered to reduce the conviction to the lesser included offense of manslaughter in the second degree (*see e.g. id.*; *People v Atkinson*, 7 NY3d 765, 766 [2006], *supra*; *People v McMillon*, 31 AD3d 136, 142 [2006], *lv denied* 7 NY3d 815 [2006]). A person commits manslaughter in the second degree when he or she "recklessly causes the death of another person" (Penal Law § 125.15 [1]). Defendant's conduct in pointing the rifle at the victim and shooting him, whether accidental or purposeful, evinced, in our view, such a conscious disregard of a substantial and unjustifiable risk that the result would occur (*see* Penal Law § 15.05 [3]). For that reason, we find the evidence legally sufficient to convict defendant of the lesser included offense of manslaughter in the second degree (*see People v Licitra*, 47 NY2d 554, 558-559 [1979]; *People v Di Bella*, 277 AD2d 699, 700-701 [2000], *lv denied* 96 NY2d 758 [2001]). To the extent that defendant's remaining contentions were properly preserved, we have reviewed them and found them to be without merit.

Mercure, J.P., Rose and Lahtinen, JJ., concur.

Carpinello, J. (concurring in part and dissenting in part). Defendant argues that his conviction for depraved indifference murder was based on legally insufficient evidence. He suggests alternative "theories" to support such claim, including that his conduct was intentional, citing *People v Payne* (3 NY3d 266 [2004]), and that the circumstances surrounding the shooting do not come within the narrow class of cases evincing utter depravity, uncommon brutality and inhuman cruelty, citing *People v Suarez* (6 NY3d 202 [2005]). The People argue that the recent changes in the law regarding depraved indifference murder do not apply here because defendant was convicted months before such changes were articulated by the Court of Appeals. The majority, in reliance on the series of cases handed down by the Court of Appeals following defendant's trial and conviction,

including *People v Payne (supra)* and *People v Suarez (supra)*, concludes that defendant's underlying depraved indifference was not sufficiently shown.

To be sure, at the time of defendant's conviction in January 2003, the elements of depraved indifference murder were governed by *People v Register* (60 NY2d 270 [1983], *cert denied* 466 US 953 [1984]) and *People v Sanchez* (98 NY2d 373 [2002]; *see Policano v Herbert,* 7 NY3d 588 [2006]). Applying the standards outlined under these cases, defendant's conviction for depraved indifference murder would be affirmed. It was only thereafter that a change in the law began to evolve, beginning with *People v Hafeez* (100 NY2d 253 [2003]) and culminating with *People v Feingold* (7 NY3d 288 [2006]), which explicitly overruled *Register* and *Sanchez.*

Importantly, on November 16, 2006, the Court of Appeals handed down *Policano v Herbert (supra).* In *Policano,* the Court of Appeals was called upon to determine whether its post-*Sanchez* case law (*see People v Feingold, supra; People v Suarez, supra; People v Payne, supra; People v Gonzalez,* 1 NY3d 464 [2004]; *People v Hafeez, supra*) should apply to cases in which a defendant's conviction was already final. In applying the three-pronged retroactivity test articulated in *People v Pepper* (53 NY2d 213, 220 [1981], *cert denied* 454 US 967 [1981]), the Court of Appeals concluded that the new definition of depraved indifference would not apply retroactively to final cases (*see Policano v Herbert, supra* at 603-604; *see also People v Stewart,* 36 AD3d 1156, 1162-1163 [2007], *lv denied* 8 NY3d 991 [2007]). The question of whether the new definition should be applied to cases on direct appeal (*see e.g. People v Pepper, supra* at 221)—or instead, whether it should be applied only prospectively (*see e.g. People v Martello,* 93 NY2d 645, 652 [1999]; *People v Mitchell,* 80 NY2d 519, 528-529 [1992]; *see also United States v Peltier,* 422 US 531, 535-536 [1975])—remained unanswered. I feel the issue must now be addressed.

Significantly, it is firmly established that "a new rule of State law need not automatically be applied to all cases currently in the direct appellate pipeline" (*People v Favor,* 82 NY2d 254, 262 [1993]; *see People v Martello, supra* at 651-652; *People v Mitchell, supra* at 526-529; *People v Reilly,* 195 AD2d 95, 100 [1994]; *People v Little,* 88 AD2d 671, 672 [1982]). Rather, "when confronted with a direct appeal that implicates a newly announced State rule of law, an appellate court must consider the threshold question of retroactivity, weighing three basic factors—(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administra-

tion of justice of retroactive application" (*People v Favor, supra* at 262 [internal quotation marks and citation omitted]; *see also People v Mitchell, supra* at 528; *People v Reilly, supra* at 100). In my view, the analysis of the first two factors undertaken by the Court of Appeals in *Policano* applies equally to nonfinal cases and militates against an application of the new rule of law to cases on direct appeal.

With respect to the pivotal first factor, the Court of Appeals clearly explained that the purpose of the new interpretation "is to dispel the confusion between intentional and depraved indifference murder, and thus cut off the continuing improper expansion of depraved indifference murder" (*Policano v Herbert, supra* at 603). Indeed, the stated goal of this new interpretation "is to 'make *future* homicide prosecutions more sustainable, increasing the likelihood that defendants who are proven beyond a reasonable doubt to have committed intentional murder will be properly held to account for that crime' " (*id.* at 603-604, quoting *People v Suarez, supra* at 217 [G.B. Smith, Rosenblatt and R.S. Smith, JJ., concurring] [emphasis added]).* Moreover, in my view, those who committed vicious crimes and were then charged and convicted of depraved indifference murder under the law as it existed at the time of their trials and convictions are equally unattractive "candidates" for reversal of their convictions on direct appeal such that nonretroactivity presents "no danger of a miscarriage of justice" (*Policano v Herbert, supra* at 604).

Furthermore, it is undeniable that prosecutors have relied extensively on "*Register*'s objectively determined degree-of-risk formulation when making their charging decisions" (*id.*; *see generally People v Martello, supra* at 652). Given such reliance, applying post-*Sanchez* case law to cases on direct appeal "would work a substantial burden on the administration of justice and could affect a large number of cases currently pending on . . . appellate court dockets" (*People v Martello, supra* at 652). Inasmuch as defendant was charged and properly convicted under the former law, I would affirm.

Ordered that the judgment is modified, on the law, by reducing defendant's conviction of murder in the second degree to manslaughter in the second degree and vacating the sentence imposed thereon; matter remitted to the County Court of

---

* Notably, three members of the Court of Appeals have expressed an "expect[ation], or at least hope, that the rule embodied in [post-*Sanchez* case law] will be applied *prospectively*, and that any impact on already completed prosecutions can be avoided" (*People v Suarez, supra* at 217 [G.B. Smith, Rosenblatt and R.S. Smith, JJ., concurring] [emphasis added]).

Schoharie County for resentencing; and, as so modified, affirmed.