*815 Appeal by the defendant from a judgment of the Supreme Court, Queens County (Kron, J.), rendered August 7, 2013, convicting him of criminal possession of a weapon in the second degree (two counts) and criminal possession of marijuana in the fifth degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing (Paynter, J.), of that branch of the defendant’s omnibus motion which was to suppress physical evidence.
Ordered that the judgment is reversed, on the law, that branch of the defendant’s omnibus motion which was to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50.
On September 29, 2011, Detective Gregory Anderson of the 113th Precinct of the New York City Police Department (hereinafter the NYPD) received a radio call directing him to respond to a residential fire at 123-06 Sutphin Boulevard in Jamaica, Queens. The dispatcher advised him that a child had placed the call to the 911 emergency operator, and had reported the location as 123-06 Rockaway Boulevard, but that the firefighters and the police officers from the 106th Precinct who responded to that location did not find a fire. Detective Anderson, along with an NYPD sergeant, responded to 123-06 Sutphin Boulevard, and found neither a residence nor a fire, but only a vacant lot along the entire side of that block where even-numbered addresses would have been situated. Detective Anderson circled the block once or twice, looking for the closest house. Across the street from 123-06 Sutphin Boulevard were four houses, and Detective Anderson determined that 123-09 Sutphin Boulevard was the closest one. He did not see or smell any smoke or fire coming from 123-09 Sutphin Boulevard. Detective Anderson did not ring the doorbell at that house. Instead, he walked along a walkway on the left side of the house for about 30 feet before reaching the rear yard. He made a right turn and walked over to the rear yard. From there, Detective Anderson could see, at the other end of the yard, a car parked at the end of a driveway. The defendant was inside the car, and Detective Anderson approached him. As he neared the vehicle, Detective Anderson saw the defendant holding a cigar-shaped object that turned out to be a cigar with the tobacco removed and marijuana substituted in its place, commonly known as a “blunt.” Detective *816 Anderson directed the defendant to exit the vehicle. Once the defendant did so, Detective Anderson saw a firearm on the driver’s seat. He seized the firearm, along with marijuana and marijuana grinding apparatus commonly known as a “crusher” that was also inside the vehicle.
The defendant was charged with two counts of criminal possession of a weapon in the second degree and one count of criminal possession of marijuana in the fifth degree. The defendant moved, inter alia, to suppress the physical evidence, but, after a hearing, the Supreme Court denied that branch of the motion. The defendant later pleaded guilty to the entire indictment, and was sentenced.
A search occurs, thereby triggering the protection of the Fourth Amendment to the United States Constitution and article I, section 12 of the New York Constitution, when the police invade an area where a person has a legitimate expectation of privacy (see People v Knapp, 52 NY2d 689, 694 [1981]; United States v Moran, 349 F Supp 2d 425, 467 [2005]). A legitimate expectation of privacy exists where a person has manifested a subjective expectation of privacy that society recognizes as reasonable (see Oliver v United States, 466 US 170, 177 [1984]; Katz v United States, 389 US 347, 361 [1967]; People v Ramirez-Portoreal, 88 NY2d 99, 108 [1996]; People v Reynolds, 71 NY2d 552, 557 [1988]; see also Florida v Jardines, 569 US —, 133 S Ct 1409, 1417 [2013]). The curtilage of the home — the area immediately surrounding and associated with the home or the area that is related to the intimate activities of the home — is part of the home itself (see Florida v Jardines, 569 US at —, 133 S Ct at 1414; Oliver v United States, 466 US at 178, 180; People v Reynolds, 71 NY2d at 558; People v Reilly, 195 AD2d 95, 98 [1994]). The determination of whether an area falls within the home’s curtilage may be made by reference to four factors: “the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by” (United States v Dunn, 480 US 294, 301 [1987]).
Consideration of these factors in connection with the evidence in this record, including two photographs of a portion of the subject premises, compels us to conclude that the defendant’s rear yard was within the curtilage of the home. The rear yard was in close proximity to the home, shielded from view by those on the street, and within the natural and artificial barriers enclosing the home. This physical arrangement made manifest *817 the defendant’s expectation of privacy, and that expectation is one that society recognizes as reasonable (see People v Saurini, 201 AD2d 869 [1994]; People v Abruzzi, 52 AD2d 499 [1976], affd 42 NY2d 813 [1977]; United States v Wells, 648 F3d 671, 677 [2011]; United States v Howe, 414 Fed Appx 579, 581 [2011]; Lundstrom v Romero, 616 F3d 1108, 1128-1129 [2010]; United States v Romero-Bustamente, 337 F3d 1104, 1108 [2003]; Daughenbaugh v City of Tiffin, 150 F3d 594, 601-602 [1998]; Quintana v Commonwealth of Kentucky, 276 SW3d 753, 760 [Ky 2009]; Kamins, 1-6 New York Search & Seizure § 6.03 [4]). Therefore, since Detective Anderson conducted a search without a warrant when he entered the defendant’s rear yard, the People were required to demonstrate that his entry was justified under some exception to the warrant requirement (see People v Rodriguez, 77 AD3d 280, 282-283 [2010]).
Under the emergency exception, the police may make a warrantless entry into a protected area if (1) they have reasonable grounds to believe that there was an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) the search was not primarily motivated by an intent to arrest and seize evidence; (3) and there was some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched (see People v Mitchell, 39 NY2d 173, 177 [1976]; People v Rodriguez, 77 AD3d at 283; People v Desmarat, 38 AD3d 913, 914-915 [2007]). The United States Supreme Court has determined that the second prong regarding the subjective intent of the police is no longer relevant under the Fourth Amendment (see Brigham City v Stuart, 547 US 398, 404-405 [2006]). However, we need not decide whether the second prong of Mitchell is still viable under the New York Constitution because we conclude that the People did not satisfy the third prong of Mitchell (see People v Doll, 21 NY3d 665, 671 n [2013]; People v Dallas, 8 NY3d 890, 891 [2007]; People v Rodriguez, 77 AD3d at 284). There was no basis for believing that there was any “direct relationship” or “nexus” between the report of the fire and 123-09 Sutphin Boulevard (see People v Mitchell, 39 NY2d at 179; People v Alster, 28 AD3d 490, 491 [2006]). The child caller reported the location of the fire as 123-06 Rockaway Boulevard (see People v DePaula, 179 AD2d 424 [1992]). Although the location Detective Anderson responded to, 123-06 Sutphin Boulevard, had the same number as the address reported, the two street names were not similar (cf. United States v Huebner, 125 Fed Appx 767 [2005]). At that location, Detective Anderson did not find a fire or even a residence, only a vacant lot. Detective Anderson decided to continue his investigation across the street from the vacant lot at the de *818 fendant’s home at 123-09 Sutphin Boulevard simply because it was closest in proximity to the vacant lot, but, again, he found no evidence of smoke or a fire. Under these circumstances, Detective Anderson did not have a reasonable basis to believe that there was a fire at 123-09 Sutphin Boulevard (see People v Andujar, 160 AD2d 403 [1990]; United States v Deemer, 354 F3d 1130 [2004]).
Since Detective Anderson did not have a lawful vantage point when he saw the defendant holding a “blunt,” the People may not rely on the plain view doctrine to justify the seizure of the gun, marijuana, and the “crusher,” since an essential predicate of the plain view doctrine is that the officer had the right to be in a position to have the view of the incriminating evidence (see Horton v California, 496 US 128, 136 [1990]; People v Machovoe, 242 AD2d 898 [1997]; People v Abruzzi, 52 AD2d at 502; Katz and Shapiro, 1-15 New York Suppression Manual § 15.03).
Accordingly, that branch of the defendant’s omnibus motion which was to suppress physical evidence should have been granted. Since, without that evidence, the People would be unable to adduce legally sufficient evidence to prove the defendant’s guilt of the crimes charged, the indictment should have been dismissed. Consequently, the matter must be remitted to the Supreme Court, Queens County, for further proceedings consistent with CPL 160.50. Dillon, J.P, Balkin, Chambers and Cohen, JJ., concur.