OPINION OF THE COURT
Fuchsberg, J.
Crucial to these three appeals, each emanating from a conviction of a felony unrelated to the others, is a common question. It calls upon us to determine what retrospective effect, if any, is to be accorded our decision in People v Samuels (49 NY2d 218), where in essence we held that once an accusatory instrument has been filed a defendant cannot waive his constitutional right to counsel save in the presence of counsel.
The Samuels rationale rested on a fundamental and uncomplicated principle, that once an accusatory instrument is filed, viewed realistically, the defendant is no longer a suspect but an accused, and the People’s role may then be said to have shifted from the more neutral theater of investigation to the far more aggressive one of prosecution. In this posture, unless our adversary system of criminal justice is to flounder on the happenstance of whether, for example, a particular defendant is ignorant or sophisticated, “any discussions relating thereto should be conducted by counsel [for] at that point the parties are in no position to safeguard their rights” (People v Settles, 46 NY2d 154, 164 [criminal proceeding initiated by indictment]).
The relevancy of the retroactivity of this holding to the cases at hand appear in the.following contexts:
In People v Pepper and People v Utter, statements were elicited from the defendants after felony complaints had been filed and arrest warrants had issued. In Pepper, the executing officers took the defendant to the police barracks; in Utter, it was to a police substation. At each location, it is established that, though the custodial warnings com *218 manded by Miranda v Arizona (384 US 436) were given, the defendant voluntarily submitted to the uncounseled interrogation. In both cases, the implicated questioning occurred well before we decided Samuels. When the defendant in each case moved, inter alia, to suppress his statement, the respective County Courts heard and denied the motions. However, on each defendant’s appeal from his ultimate judgment of conviction, the Appellate Division, now acting post-Samuels, reversed the judgment, granted the motion to suppress and remanded the case to the County Court for further proceedings. The People now appeal from the orders of reversal, each by leave of a Judge of this court (CPL 460.20).
In People v Torres, two statements, one an oral confession made to a police detective and the other a stenographically recorded statement made to an Assistant District Attorney, were obtained from the defendant under circumstances sufficiently similar for the People to concede that Samuels is factually apposite. But, for present purposes, this case is distinguished from Pepper and Utter in the important respect that, after the trial court, here the Supreme Court sitting in Kings County, had denied suppression, the Appellate Division, before whom the appeal arrived before rather than after we ruled in Samuels, affirmed. To be precise, though sentence had been pronounced on Torres on March 3, 1976 and the Appellate Division affirmed his conviction on June 26, 1978, it was not until more than a year and a half later, January 15, 1980, that we decided Samuels. Long before then, on August 15, 1978, a Judge of this court had denied Torres’ application for leave to appeal (45 NY2d 831). The ultimate grant that presently brings up the defendant’s appeal was on an application for reconsideration presented post-Samuels (50 NY2d 1064).[1]
The position of each party on the pivotal prospective versus retrospective issue is pointed. In all three cases, emphasizing, among a miscellany of considerations, that *219 “Samuels established wholly new law in New York”, that it does not relate to the integrity of the fact-finding process, that law enforcement authorities have placed justifiable reliance on the “pre-Samuels” rule and that the impact of retrospective application on the administration of justice would be both adverse and “monumental”, the People ask that it be applied prospectively only to those cases tried after Samuels. However, against the contingency that we find Samuels applicable to cases still in the appellate process at the time we announced that decision, they urge, in the alternative, that in Torres’ case we treat the date when his initial application for leave to appeal to this court was denied as the end of his appellate road. As to the defendants, not surprisingly, Torres insists that his case is still not finally determined, and all three seek full retroactivity. For the reasons which follow, we believe the Appellate Division’s decision was correct in two of the cases and we do not reach the third because it was no longer in the appellate process.
None of the arguments submitted to aid us in fixing the most appropriate date for putting the overruling in question into effect is new. All have figured in the extensive attention the subject has received from jurists and commentators who in the last half century have searched for ways in which principled mitigation of the hardships that at times may accompany abrupt changes in decisional law can be achieved (see Overruling Decision — Application, Ann., 10 ALR3d 1371; Fairchild, Limitation of New Judge-Made Law to Prospective Effect Only, 51 Marq L Rev 254; Cardozo, Address Before the New York State Bar Association, 1932 NYSBA Report 263, 296-298).
As a result, over the years, in some instances the historic common-law rule, that all cases on direct appeal must be decided in accordance with any newly declared but conceptually always existent principle, has been tempered where there was significant reliance on a now overruled and, therefore, in theory, erroneously stated precedent (see People v Morales, 37 NY2d 262, 267-268, and authorities cited thereat; Snyder, Retroactive Operation of Overruling Decisions, 35 Ill L Rev 121; Schaefer, Control of “Sun *220 bursts”: Techniques of Prospective Overruling, 42 NYU L Rev 631). However, notwithstanding such departures and the underlying tensions they display, overall much of the vitality of the traditional rule has survived the debate. This steadfastness is consonant with the fact that in any event most decisional law acts on past events. The retro-activity principle is also symbolic of the credo that our government is one of laws and not of men, a concept which depends heavily on a sense of continuity. (See Montague v Vinzant, 643 F2d 657, 659-660; Mishkin, The High Court, the Great Writ, and the Due Process of Time and Law, 79 Harv L Rev 56, 62-67.)
The conflict between these opposing forces has not left the area of criminal procedure untouched. In a series of opinions, both this court and the United States Supreme Court have addressed the subject, both in cases pending on direct appeal and, if the appellate process has been exhausted, where relief is sought in collateral proceedings (see, e.g., United States v Peltier, 422 US 531; People v Morales, 37 NY2d 262, 268-269, supra, and cases cited thereat).
This is not to say that definitive standards have evolved. But neither is the field untracked. As we noted in Morales (37 NY2d 262, 269, supra), useful, if general, guideline, are available. In judging whether it is more appropriate to adhere to rather than deviate from the common-law convention, be it to grant full retroactive application (permitting a collateral attack on a conviction no longer in normal appellate channels) or to limit relief to prospective police conduct or trials, in Desist v United States (394 US 244, 249), the Supreme Court stressed, and in Morales we had occasion to weigh, three factors: “(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards”. In this formulation, the extent of the reliance and the nature of the burden on the administration of justice are of substantial significance only when the answer to the retroactivity question is not to be found in the purpose of the new rule itself (Desist v United States, supra, p 249).
*221 Thus, where otherwise there could be a complete miscarriage of justice, current constitutional standards that go to the heart of a reliable determination of guilt or innocence have been substituted for those in effect at the time of trial (Stovall v Denno, 388 US 293, 297 [right to counsel decisions “at stages of the prosecution where denial of the right must almost invariably deny a fair trial”] ; Holloway v McElroy, 632 F2d 605 [appellate review of sufficiency of evidence]). So too, at the other end of the spectrum, decisions which are only collateral to or relatively far removed from the fact-finding process at trial have been applied prospectively (e.g., United States v Peltier, 422 US 531, supra [exclusionary rule in search and seizure cases, the intended deterrent effect of the ruling having no necessary relationship to the reliability of the admitted proof]).
In contrast to the extremes described in these Federal cases, as our own decisions have made clear, a defendant’s right to counsel in pretrial encounters falls within a middle ground. So, while we have found retroactivity in order in such cases, its application has been limited to those still on direct review at the time the change in law occurred (e.g., People v Albro, 52 NY2d 619, 624; People v Bell, 50 NY2d 869; People v Singer, 44 NY2d 241, 251; People v Macedonio, 42 NY2d 944). In counterpoint, we have denied retroactive application where that process has been exhausted (People v Wooden, 46 NY2d 938; People v Robles, 42 NY2d 1051; People v Rivera, 16 NY2d 879).
We see no reason to depart from that course here. While we cannot say that uncounseled station house interrogations necessarily go to the ultimate issue of guilt or innocence, they are not insignificant events. Aside from the avoidance of incriminating statements, the benefits of introduction of counsel at that stage, with its concomitant advantages of early advice and investigation, are not to be ignored.
In addition, in balancing the importance of the right Samuels guarantees against its effect on other pending cases, we cannot lose sight of the fact that the relatively early terminal point of retroactivity limited to cases young *222 enough to still be on direct appeal militates against the likelihood of prejudicial mildewing of witnesses’ memories.
The People’s reliance argument is even less impressive. For one thing, our decision need not have taken the People by surprise. Given the broad philosophical language of People v Hobson (39 NY2d 479, 484), which, in turn, had been more than foreshadowed by People v Arthur (22 NY2d 325) and the still earlier cases cited therein, it was hardly unanticipated. Indeed, since, as Justice Jackson put it realistically, “any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to police under any circumstances” (Watts v Indiana, 338 US 49, 59), it is difficult to perceive how they could have ended up in a different position from the one in which suppression leaves them, i.e., without the statement.
Appellant Torres, however, is not entitled to benefit from the change in law. The normal appellate process came to an end for him upon the original unconditional denial of his application for leave to appeal to this court (People v Muller, 11 NY2d 154, 156, cert den 371 US 850).[2] Thereafter, only complete retroactivity could make Samuels applicable. And that, impermissibly, would mean that every defendant to whose case it was relevant, no matter how remote in time and merit, would become its beneficiary. Absent “manifest injustice”, no exception was available to Torres (People v Robles, 42 NY2d 1051, supra).
Accordingly, each of the orders appealed from should be affirmed.

. As required by People v Welcome (37 NY2d 811), the application for reconsideration was made to the Judge who initially denied leave to appeal. (See, also, 22 NYCRR 500.8 [b].)

. We note that, while a Judge of this court has discretion to reconsider a prior denial of an application for leave to appeal, that discretion is exercised rarely (see People v Welcome, 37 NY2d 811, supra). All the more is this so in light of the availability of a proceeding to vacate a judgment pursuant to GPL article 440 in circumstances in which a decisional law must be given complete retroactivity (see People v Pohl, 23 NY2d 290).