(July 16, 1981)


■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL J. MUCCIA, Appellant. — Appeal from a judgment of the County Court of Ulster County (Cholakis, J.), rendered November 30, 1978, upon a verdict convicting defendant of two counts of the crime of murder in the second degree. Defendant Muccia and one Wendell Downs were tried jointly and each was convicted of one count of common-law murder and one count of felony murder. Muccia testified at trial that in the early morning hours of November 28, 1977, he was driving his car to New Paltz in the company of his friend Downs and one Edward Cuzzi. Cuzzi was in the passenger seat and Downs was in the back seat. Cuzzi had just arrived from New York City with a quantity of cocaine to sell to defendant. An argument developed about the quality of the cocaine and defendant claimed that Downs "blew up" and shot Cuzzi three times in the head. After removing Cuzzi's wallet and the cocaine, they disposed of the body by weighting it down with a cement block and throwing it into the Esopus Creek. The next morning, defendant and Downs drove in the same car to Dorchester, Massachusetts, where defendant's girlfriend resided. Downs returned to the Hurley, New York, area and, on November 30, 1977, he was arrested and questioned by the New York State Police. Downs implicated defendant as a participant in the murder and informed the police of defendant's address in Massachusetts. A felony complaint charging defendant with murder was filed by a State Police officer in the Town Court of the Town of Ulster, New York, on December 1, 1977. A warrant for the arrest of defendant was also issued from the Town Court on the same date. Two New York State Police investigators left Kingston, New York, some time after midnight on the morning of December 1, 1977 for Dorchester to aid in the arrest of defendant and return him to New York if he waived extradition. As they arrived at police headquarters in Dorchester, a suburb of Boston, at about 6:30 A.M. on December 1, a teletype message from the New York State Police was received by the Boston police requesting the arrest of defendant for murder. The actual warrant of arrest was delivered to Dorchester late in the afternoon of December 1 by Officers Gruenwald and Grogan of the New York State Police. Defendant was arrested at about 6:40 A.M. on December 1 in the apartment of his girlfriend in Dorchester by the Boston police accompanied by the two New York State Police investigators, Wayne E. Beyea and Robert Stabile. Later that day, between the hours of 2:30 P.M. and 3:35 P.M., a typewritten inculpatory seven-page statement was taken by the New York investigators from defendant. After signing two pages of the statement, defendant said that he would not sign any more pages until he had seen an attorney. The interview then ceased. Defendant had been advised of his *Miranda* rights on various occasions that day after his arrest. However, significantly, Investigator Beyea testified at the suppression hearing that while he was taking the typewritten statement from defendant, Boston police "kept coming into the room and asking me if we were ready to go to court". Defendant was arraigned in Dorchester District Court on December 2, 1977. At that time he was represented by assigned counsel. He eventually waived extradition and returned to New York State with the State Police. At the conclusion of a suppression hearing, all of the defendant's inculpatory statement was ruled admissible and in fact was admitted into evidence at the trial. Defendant was sentenced to 25 years to life imprisonment on each count, the sentences to run concurrently.

This appeal ensued.[*] There should be a reversal. The inculpatory statement obtained from defendant, in the absence of counsel, after the filing of the felony complaint and the issuance of a warrant for his arrest thereon, must be suppressed *(People v Samuels,* 49 NY2d 218). Defendant's right to counsel had attached prior to the time the statement was taken on these facts. And, as the Court of Appeals has ruled recently, the *Samuels* holding is to be applied retroactively to cases on direct appeal *(People v Pepper,* 53 NY2d 213). The People argue that because defendant was a fugitive and was apprehended in a State which has not adopted the *Samuels* rule, we should hold the rule inapplicable to him. They reason that New York State cannot force a sister State to provide counsel for a New Yorker under conditions where it would not be necessary to do so for one of its own citizens. They also contend that when defendant fled to Massachusetts, he waived his right to the protection of the laws of New York State. However, the arguments of the People are not consistent with the facts herein. Defendant actually was provided with assigned counsel when taken to court in Dorchester. The Boston police delayed taking him before a court in deference to the New York State Police who were busy obtaining a typewritten statement from him. Further, it is difficult to see how the fact that he was apprehended in another State is so significant that it should deprive him of the application of the holdings in *People v Samuels (supra)* and *People v Pepper (supra)*. In view of our decision herein, we need reach no other issues raised on this appeal. Judgment reversed, on the law, and a new trial ordered. Mahoney, P.J., Sweeney and Mikoll, JJ., concur; Kane and Weiss, JJ., dissent and vote to withhold determination of the appeal and remit the matter to the trial court for further proceedings.

Kane, J. (dissenting). The suppression hearing and trial herein were conducted in October of 1978, more than a year before the Court of Appeals held in *People v Samuels* (49 NY2d 218) that, after a criminal action has been commenced, related inculpatory statements made in the absence of counsel must be suppressed. Thus, neither the trial court nor the parties were particularly concerned about whether the instant felony complaint was filed before or after defendant confessed his participation in this brutal murder, and no specific finding was made on that issue. Since the *Samuels* ruling must be applied on this direct appeal *(People v Pepper,* 53 NY2d 213), the majority correctly examines that question, but, in our opinion, reaches a totally unwarranted conclusion. While the record does indicate that a felony complaint was filed and an arrest warrant based thereon was issued on December 1, 1977, the date of defendant's confession, the precise sequence of events is far from certain. The State Police investigators who traveled to the Boston area and questioned defendant plainly did not have any warrant in their possession. Indeed, as the majority notes, it was delivered late that afternoon by another officer. Given the times which are known, the criminal action was *probably* commenced before defendant incriminated himself and it was *probably* initiated by the same police agency responsible for his interrogation (see *People v Bartolomeo,* 53 NY2d 225), yet such inferences are hardly acceptable substitutes for readily available proof. The record, in short, is not sufficiently conclusive on this critical point to justify a factual finding by this court. Determination of the appeal should be withheld and the matter remitted to the trial court for further development of the pertinent circumstances. Lastly, an inculpatory statement obtained in violation of *Samuels* may not be used in a New York Court because it offends against the New York State Constitition. No finding was made that the Boston police delayed in taking defendant to a

---

[*] Codefendant Downs' conviction was affirmed on appeal to this court *(People v Downs,* 77 AD2d 740, mot for lv to app den 51 NY2d 773).

court in deference to New York authorities, and the majority's gratuitous remark to that effect is both unnecessary and inappropriate to its resolution of this appeal.