OPINION OF THE COURT
Daniel P. Conviser, J.
The defendant pleaded guilty an May 1, 2013 to attempted-assault in the second degree. On May 22, 2013 she was sentenced in accordance with the plea agreement to an indeterminate term of 2 to 4 years’ incarceration as a predicate felony offender. The defendant now moves to vacate that sentence by this postjudgment motion pursuant to CPL 440.20 (1). She argues that the prior felony conviction relied upon to enhance her sentence in the instant case was unconstitutionally obtained and that defense counsel at the instant sentencing was ineffective when he failed to challenge the legality of that prior conviction. For the reasons set forth below the defendant’s motion is granted, the instant sentence is vacated and the court has scheduled a new sentencing proceeding on July 28, 2016 at which a lawful sentence will be pronounced.
Statement of Facts
The defendant was convicted of burglary in the second degree by plea of guilty on February 1, 2000 in Onondaga County. That plea arose from initial charges of burglary in the first degree, criminal possession of a weapon in the third degree and menacing in the second degree. The minutes of this proceeding establish that no discussion occurred with respect to postrelease supervision (PRS) at either the defendant’s plea or sentencing. The defendant was sentenced on that case in accordance with her plea to a determinate term of imprisonment of two years on February 16, 2000. She was subject to five years of postrelease supervision after the completion of her two-year determinate sentence. The PRS term was administratively imposed by the Department of Corrections and Community Supervision.
Defense counsel in the instant case did not challenge the legality of the 2000 conviction at any point during the proceed *257 ings leading to the instant sentence. He has affirmed that he conducted no investigation and was unaware of any issue concerning the legality of that prior conviction. He further asserts that he had no strategic reason for not challenging the legality of the predicate conviction and would have challenged it had he been aware of the relevant issues. The 2000 conviction formed the basis for the finding that the defendant was a predicate felon in the instant case. The defendant is currently in custody serving the sentence imposed on the instant indictment.
Ms. Dennis was released from custody with respect to her 2000 conviction on September 20, 2001. According to the People, she was arrested more than 30 times for virtually all misdemeanor offenses over the next 10 years. The instant conviction arose from conduct on November 1, 2011. According to the People, the defendant while confined at a hospital,
“spit at and cursed at her nurse, then got out of her bed, shoved a computer at the nurse, picked up a water pitcher, and repeatedly struck the nurse on her head and in her face with the pitcher. The middle-aged nurse suffered cuts, including one that required five stitches to close, bruises, and pain to her face.”[2]
Ms. Dennis was charged with assault in the second degree and then pleaded guilty to attempted assault in the second degree.
At the time she pleaded guilty, the defendant had a second pending second-degree assault charge in Bronx County for an assault which allegedly occurred while she was confined at Rikers Island in 2012. It was anticipated at the time of her instant plea that the Bronx case would be resolved with a plea and a concurrent sentence. That, in fact, subsequently occurred and the defendant was given a 2-to-4-year indeterminate sentence in the Bronx case to run concurrently with the instant conviction. While incarcerated on the instant case, the defendant pleaded guilty to the class E felony of aggravated harassment of an employee by an inmate and on October 23, 2014 received a promised indeterminate sentence of IV2 to 3 years’ incarceration for that conviction. In that case, it was alleged she spit blood at a prison attendant.
*258 Conclusions of Law
Since PRS is a mandatory component of the sentences to which it applies it is a direct, not collateral, consequence of a guilty plea and, as such, the court’s failure to advise or inform a defendant of mandatory PRS requirements violates due process and requires the reversal of a conviction. (People v Catu, 4 NY3d 242 [2005].)[3] The First Department has squarely addressed the issues in the instant motion, compelling the relief the defendant seeks here. Those decisions can best be understood chronologically.
In People v Fagan (116 AD3d 451 [1st Dept 2014]), the Court found that an attorney had provided ineffective assistance of counsel in not challenging the constitutionality of a pre-Cata conviction which the defendant suffered in 2000 in which PRS was not pronounced. That 2000 conviction was then used as one of the predicate convictions which resulted in the defendant’s adjudication as a persistent violent felony offender in 2010. Fagan, like the instant case, considered a postjudgment collateral attack on the conviction. As in the instant case, the attorney in Fagan acknowledged that he did not have a strategic reason for not challenging the 2000 conviction and said that had he known the applicable law, he would have mounted such a challenge.
Fagan is significant in at least three respects. First, it was a ruling on the merits. Second, although the Court did not explicitly address whether Catu could be applied retroactively, Fagan did retroactively apply the decision to a postjudgment motion. Finally, the Court applied Catu retroactively to a post-judgment motion alleging the ineffective assistance of counsel, although the decision also vacated the defendant’s sentence on direct appeal with the two appeals (of defendant’s sentence and the denial of his postjudgment motion) considered together.
The Court next ruled on these issues in People v Agard (127 AD3d 602 [1st Dept 2015]). In Agard, the Court again vacated the defendant’s sentence based on defense counsel’s ineffective assistance in not challenging a pre-Catu predicate sentence in which PRS was not pronounced which was then used to enhance the defendant’s instant sentence. The People had argued that Catu errors were not federal constitutional violations which would impact subsequent sentences, that Catu *259 could not be retroactively applied and that therefore defense counsel had not been ineffective. The Court found those arguments unpreserved and declined to address “the merits of these issues on this appeal.” (Id. at 603.)
The First Department had obviously implicitly ruled on the merits of the Catu retroactivity issue a year earlier in Fagan. But the Court refused to reaffirm its views on the merits of the issue in Agard. In Agard, however, the Court also found defendant’s counsel ineffective and vacated his sentence. The Court could not possibly have reached that result unless they implicitly found Catu applied retroactively in Agard, as they implicitly did in Fagan.
The Court reached the same result in People v Lara (130 AD3d 463 [1st Dept 2015]) with still additional procedural caveats. The Lara Court first held that “[d]efense counsel rendered ineffective assistance at defendant’s persistent felony offender adjudication” in not challenging a pr e-Catu conviction in which PRS was not pronounced. (Id. at 464.) It then said, however, that it was not deciding “whether a Caiu-violative conviction may serve as a predicate felony” (id. at 465, citing Agard). As in Agard, however, defendant’s counsel could only have been ineffective if Catu applied retroactively. Finally, the Court said that it was holding “only” that “defendant is entitled to a hearing on the issue at which counsel can fully develop a record and arguments.” (Id. at 465.) But the Court had already determined defense counsel provided ineffective assistance.
A clear position on the underlying issues came in People v Smith (132 AD3d 511 [1st Dept 2015], lv granted 26 NY3d 1150 [2016]). There the Court found that a predicate felony conviction which predated. Catu and did not include a PRS pronouncement was invalid for predicate felony purposes and could not be used to enhance an instant sentence. Smith again considered a postjudgment motion although not one alleging ineffective assistance. The Court explicitly found that Catu “implicates rights under the federal Constitution as well as the state constitution” and therefore meant a conviction which included a Catu error could not be counted by virtue of CPL provisions disallowing convictions obtained in violation of the United States Constitution. (132 AD3d at 511, citing CPL 400.15 [7] [b].) The Court held that “the rule of law announced in Catu applies retroactively to pr e-Catu convictions.” (132 AD3d at 512.) Smith is also significant because it propounded *260 a retroactivity rule in a case which (unlike Fagan) considered only a collateral attack rather than a collateral attack and a direct appeal.
Finally, the Court revisited the Fagan case following a second appeal after a remand from the Court’s original Fagan decision in People v Fagan (134 AD3d 411 [1st Dept 2015] [Fagan II]). On remand, the trial court disregarded the 2000 conviction the Fagan Court had found invalid and adjudicated the defendant as a second violent rather than persistent violent felony offender. Affirming the principles it had announced in Smith and Fagan, the Court upheld the sentence.
The Third Department also applied a variant of the same retroactivity rule although in a context very different than the instant case in People v Brewington (127 AD3d 1248 [3d Dept 2015]). There, the Court invalidated the use of a 1999 predicate conviction where PRS was not properly pronounced in a 2013 persistent violent felony adjudication in which the legality of the 2013 sentence was raised on direct appeal. In Brewington, the defendant was informed about the PRS term by the court at his 1999 sentencing and expressed “surprise” at that result but was not given the chance to withdraw his plea in either of two sentencing proceedings in which a PRS term was pronounced. (Id. at 1249.)
Here, as in the Smith/Fagan cases, the defendant’s instant sentence was based on a predicate conviction which predated Catu in which PRS was not pronounced.[4] As in Fagan, defendant’s counsel did not challenge the predicate conviction and had no strategic reason for not doing so. The Smith/Fagan cases compel the conclusion that defendant’s counsel provided ineffective assistance at her instant sentencing. This court respectfully disagrees with the jurisprudence of the First Department on this issue and will outline why. The court is obligated to follow these cases, however.
Before exploring the issue further, two additional important trial court decisions and one issue regarding the defendant’s 2000 sentence should be addressed. Justice Obus of this court recently denied an ineffectiveness claim under similar circum *261 stances in People v Joyner (Sup Ct, NY County, Apr. 14, 2016, Obus, J., index No. 1632/07). The Joyner court’s conclusions were based on three rationales, one of which makes that case clearly distinguishable from this one. The defendant in Joyner had a PRS term unlawfully imposed on his predicate conviction. But he did not actually serve any PRS time. Thus, as Justice Obus pointed out, it was difficult to see how the defendant’s federal constitutional rights could have been violated with respect to the predicate conviction. In the instant case, .the defendant actually served a period of postrelease supervision.
■ The Joyner court also outlined two additional rationales for its holding, both of which are applicable to the instant case. This court agrees with the Joyner court’s reasoning on those additional points as well, but respectfully believes those two additional rationales supporting the denial of defendant Joyner’s motion are contrary to the First Department’s jurisprudence on the issue. First, the court noted that the instant sentence in the case (as was true here) was imposed prior to the first of the Smith/Fagan cases which were announced in 2014 and 2015. As discussed infra, it is difficult to understand how an attorney could be ineffective in not raising a legal argument (i.e., that a pre-Catu predicate conviction was invalid because of the failure to pronounce PRS) when there was no reason in 2007 (when the instant Joyner sentencing occurred) to believe such a legal argument would prevail. Fagan, however, implicitly rejected that argument because it held counsel was ineffective in that case in failing in 2010 (prior to the Smith/Fagan cases) to challenge a predicate conviction which was obtained without a PRS pronouncement in 2000.
Second, the court found the attorney in Joyner had, in fact, been effective in the case despite his failure to challenge the validity of the prior conviction because he obtained a favorable plea bargain. Counsel in the instant case also negotiated a favorable disposition. The First Department’s jurisprudence on this issue, however, in this court’s view, does not allow for such case-specific analysis. Smith held simply, that “a conviction obtained in violation of Catu implicates rights under the federal Constitution” and must result in the vacatur of a sentence which relied upon such a conviction. (132 AD3d at 511.) Fagan held, in similar absolute terms, that the failure to challenge a *262 predicate conviction which includes a Catu error without a strategic reason constitutes the ineffective assistance of counsel.[5]
A second important trial court holding on this issue is Justice Kahn’s decision in People v Province (47 Misc 3d 286 [Sup Ct, NY County 2015]). Justice Kahn (formerly of this court and now a Justice of the First Department) conducted a scholarly analysis of the Catu retroactivity issue and concluded, inter alia, that Catu errors were federal constitutional violations and that Catu must be applied retroactively. This court respectfully disagrees with both of those points for the reasons outlined infra, but Justice Kahn’s decision, like the Joyner case, is an important precedent here and was cited with approval in Smith.
The third preliminary issue is one which was not raised by the parties here or during the defendant’s 2000 plea and sentencing. The defendant’s 2000 determinate sentence of two years for burglary in the second degree was unlawful for reasons having nothing to do with PRS. Burglary in the second degree is a class C violent felony. The minimum determinate term for such a conviction in 1999 (when the crime was committed), in 2000 (when the sentence was imposed) and today was and continues to be 31/2 years, not two years. (See Penal Law § 70.02 [1] [b]; [3] [b].) The defendant received a determi-, nate sentence in 2000 which was 11/2 years less than the minimum term the court was required to impose.
Catu Did Not Vindicate a Federal Constitutional Right
Smith was premised, inter alia, on the Court’s holding that Catu errors were federal constitutional violations, triggering the requirement of CPL 400.15 (7) (b) that convictions obtained in violation of the United States Constitution cannot be used as predicate felony convictions to enhance a defendant’s sen *263 tence.[6] Catu held that defendants must be advised of PRS consequences because they are a direct rather than a collateral result of a guilty plea. That holding relied upon the Court’s earlier decision which asserted the same principle with respect to immigration consequences, People v Ford (86 NY2d 397 [1995]). Ford held that deportation consequences were a collateral rather than direct consequence of a guilty plea. But, as relevant here, Ford based that conclusion on a range of federal and state authorities grounded in both state law and the Federal Constitution. (86 NY2d at 402-403.) Catu itself then, in this court’s view, did not directly answer the question of whether the decision vindicated a federal constitutional right.
In Pignataro v Poole (381 Fed Appx 46, 49 [2d Cir 2010]), however, the Second Circuit denied habeas corpus relief to a defendant who was subject to a Catu error holding that to obtain habeas relief for that violation the defendant had to demonstrate the error was “contrary to, or involved an un-reasonble application of, clearly established Federal law, as determined by the Supreme Court of the United States.” {Id. at 49.) The court held that standard had not been met because the United States Supreme Court had not considered the issue, and that the failure to pronounce PRS was not a direct consequence of a guilty plea. That later finding made the court’s conclusions directly contrary to those of the Court of Appeals in Catu. Pignataro v Poole, however, also did not completely address the federal constitutional issue. It was rather based on the more limited question of whether the defendant had met the standards for federal habeas corpus relief.
The defendant in Pignataro had been resentenced under Penal Law § 70.85 (a post-Cato statute which allows defendants subject to Catu errors to be resentenced without the imposition of a PRS term) prior to the court’s decision in Pignataro v Poole.[7] He subsequently challenged the constitutionality of that statute. That challenge was denied by the New York Court of Appeals in People v Pignataro (22 NY3d 381 [2013]).
*264 There, however, the Court appeared to squarely address the constitutional underpinnings of the Catu rule. The Court held that
“[b]y now it is well established that the State Constitution requires a trial court to ensure that a defendant has a ‘full understanding of what the plea connotes and its consequences’ (People v Ford, 86 NY2d 397, 402-403 [1995] [citations omitted]). A guilty plea made without notification from the court about the direct consequence of a PRS term violates the Constitution because it could not have been ‘a voluntary and intelligent choice among the alternative courses of action’ ” (22 NY3d at 385, citing to Catu and other New York State holdings).
The Court of Appeals had also cited the New York State Constitution in its PRS decision in People v Hill (9 NY3d 189, 191 [2007]), one of the cases cited in People v Pignataro. Thus, while the question of whether Catu errors were federal constitutional violations was left unsettled in Catu itself, People v Pignataro appeared to ground the doctrine on the State Constitution. The First Department itself, prior to its holdings in the Smith/Fagan cases, had also understood the issue that way. In People v Alvarado (67 AD3d 430 [1st Dept 2009], lv denied 13 NY3d 936 [2010]) the Court said that “defendant’s prior [Cato-violative] conviction was not obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States.” (People v Province, 47 Misc 3d at 295-296 [internal quotation marks omitted], quoting People v Alvarado, 67 AD3d at 431 [brackets added in Province];[8] see also People v Menjivar, 9 Misc 3d 1108[A], 2005 NY Slip Op 51451[U] [Sup Ct, Queens County 2005, Rotker, J.], lv dismissed 6 NY3d 778 [2006] [Catu was not based on federal constitutional principles].)
Perhaps the clearest indication that Catu is not based on the United States Constitution, however, as the People point out, is that per se reversal rules do not apply when the federal *265 courts consider the effect of a failure to apprise a defendant of important sentencing consequences. Obviously, if Catu implemented a federal constitutional right, such per se reversal rules would be applied by the federal courts. But they are not.
Plea vacaturs in federal court based on a failure to inform a defendant about important sentencing parameters are only granted if a defendant can show the lack of information would have resulted in a different plea decision. That is the precise prejudice test Catu rejected. (See e.g. Hunter v Fogg, 616 F2d 55, 58 [2d Cir 1980] [“(w)hen a state court guilty plea is alleged to be constitutionally invalid because the defendant was not told or was misinformed about sentencing information requisite to an informed plea, the issue is whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea” (internal quotation marks omitted)]; United States v Cacace, 289 Fed Appx 440 [2d Cir 2008] [trial court’s incorrect statement to pleading defendant that his maximum supervised release term would be three years rather than the correct imposed term of five years does not warrant vacatur of supervised release since defendant did not demonstrate correct information would have resulted in his not taking plea]; Hill v Lockhart, 474 US 52, 60 [1985] [propounding a similar principle].)
If the defendant here had demonstrated that she would not have pleaded guilty in 2000 to a lesser charge with a determinate sentence below that charge’s statutory minimum had she known that sentence would include postrelease supervision, there might be a plausible argument here that the predicate conviction was obtained in violation of a federal constitutional right. But no such claim is made -here.
There are reasonable arguments on both sides of the debate over whether Catu corrected a federal constitutional violation. The better argument, however, in this court’s view, is that Catu errors are not federal constitutional violations and that therefore a Caiw-violative conviction can be used as a predicate felony to enhance an instant sentence. That is the first reason this court respectfully disagrees with the First Department’s recent jurisprudence on this issue.
Catu Cannot be Applied Retroactively Based on Federal Retroactivity Principles
Regardless of whether Catu was grounded in the United States or the New York State Constitutions, however, it should *266 still not be applied retroactively on post-conviction review. The defendant’s Caiu-violative conviction here occurred on February 1, 2000. The instant motion for postjudgment relief was filed on January 16, 2016.
The United States Supreme Court has held that the question of whether federal constitutional rules apply retroactively to cases no longer subject to direct review hinges on whether a rule is “old” (in which case it is retroactively applicable) or “new” in which case it is not. (Teague v Lane, 489 US 288 [1989]; People v Baret, 23 NY3d 777, 783-784 [2014].) A rule is “new” when “the result was not dictated by precedent existing at the time the defendant’s conviction became final” while a constitutional rule which is “susceptible to debate among reasonable minds” qualifies, as a new rule. (23 NY3d at 784 [citation and internal quotation marks omitted].)[9]
This court, of course, does not believe Catu was based on the Federal Constitution. But it will briefly analyze the federal retroactivity issue anyway. First, it is important to clarify the principle which should be assessed under the “old” vs. “new” rubric. There is no question that courts have always been required to inform defendants of PRS consequences during pleas and pronounce PRS terms at sentencing, despite the failure of many courts to do so in the initial years following the enactment of PRS requirements. In People v Province, the court focused on this threshold inquiry and properly found that the answer to the question of whether the obligation to inform pleading defendants of PRS terms outlined in Catu was an “old” or “new” rule was that it was an old rule.
In this court’s view, however,, that is not the proper retro-activity question here. Catu, in asserting that defendants had to be advised of PRS terms, broke no new ground. The identi *267 cal requirement had been asserted by appellate courts previously. (See e.g. People v Mason, 2 AD3d 272 [1st Dept 2003], lv denied 1 NY3d 630 [2004].) Catu did, however, propound a new per se reversal rule allowing defendants to void convictions in which PRS was not pronounced without a showing of prejudice. That per se reversal rule clearly changed prior law. It is that new rule (not the requirement that defendants be informed about PRS) which has resulted in the instant motion. It is that new rule (not the requirement to pronounce PRS) which has impacted predicate felony adjudications. It is that new rule which must be analyzed here.
It is obvious that this result was not dictated by prior precedent. Prior to Catu, the First, Second and Fourth Departments had all rejected the per se reversal rule announced in Catu. Those Courts had all held that a defendant who pleaded guilty without being informed of a PRS term could vacate a sentence only if the defendant could demonstrate he would not have pleaded guilty had he known about PRS. (People v Mason; People v Ballinger, 12 AD3d 686 [2d Dept 2004]; People v Bonilla, 6 AD3d 1059 [4th Dept 2004].) The New York Court of Appeals, in 1967, had also asserted the general principle that defects in plea allocutions could not result in reversals without a demonstration of prejudice. (People v Nixon, 21 NY2d 338, 355 [1967].) Only the Third Department, prior to Catu, had endorsed a per se reversal rule. Even that conclusion, however, came in a case where the defendant moved to withdraw his plea prior to sentencing, not in a case where a motion was made 16 years after a Catu error occurred.
It is also informative that, as far as this court can ascertain, Catu was not generally understood to apply retroactively to collateral attacks on predicate felony convictions used to enhance sentences in the period between 2005 (when the decision was announced) and 2014 (when Fagan applied the decision retroactively). Thus, prior to the Smith/Fagan cases, courts and lawyers apparently generally believed Catu had announced a new rule which did not apply to postjudgment motions, at least with respect to collateral attacks on predicate felony convictions.
The retroactivity issue was not “subject to debate” among reasonable legal minds prior to Fagan, but not because Catu was uniformly understood based on prior precedent to have simply applied an existing rule. It was not subject to debate because it was apparently commonly understood to have *268 enacted a new rule which was not subject to retroactive application. (See People v Joyner, slip op at 5 [surveying a range of pre-Fagan decisions and concluding that “(i)n none of these cases was there a suggestion that the earlier conviction upon which the defendant was resentenced without PRS pursuant to Penal Law § 70.85 was constitutionally defective such that it could not qualify as a predicate felony at all”]; People’s response ¶ 21 [prior to Smith, the retroactive application of Catu errors to predicate convictions “was not the law”]; People v Province, 47 Misc 3d at 299 [noting that as of Jan. 8, 2015, there were “no appellate court holdings squarely addressing the issue of the retroactive applicability of Catu in predicate adjudication proceedings” but citing three cases, including Fagan, supporting such retroactive application].)[10]
The First Department itself, in People v Odom (63 AD3d 408. [1st Dept 2009] [Odom 17]), had also explicitly found that Catu could not be applied retroactively. That holding, however, arose from what the Court found were procedural barriers in that particular case, rather than an analysis of general retroactivity principles, and is discussed infra.
Catu Cannot be Applied Retroactively under the Three-Part Pepper Test
With respect to whether a new precedent should be given retroactive application in a collateral attack on a conviction under New York law, the Court of Appeals has articulated a three-part test: “the purpose to be served by the new standard; the extent of the reliance by law enforcement authorities on the old standard; and the effect on the administration of justice of a retroactive application of the new standard.” (People v Baret 23 NY3d at 793, citing People v Pepper, 53 NY2d 213 [1981].)
The second and third Pepper factors are given substantial significance only when the answer to the retroactivity question is not found in the first factor. This means that “where *269 otherwise there could be a complete miscarriage of justice, current constitutional standards that go to the heart of a reliable determination of guilt or innocence have been substituted for those in effect at the time of trial” while “decisions which are only collateral to or relatively far removed from the fact-finding process at trial have been applied prospectively.” (People v Pepper, 53 NY2d at 221.)
The Pepper rules “disfavor retroactivity.” (People v Baret, 23 NY3d at 799.) “Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.” (Teague v Lane, 489 US at 309.) With respect to the validity of predicate felony convictions used to enhance sentences which are alleged to be invalid by virtue of the deprivation of a constitutional right, those rights are generally considered by evaluating “the law existing at the time the conviction was obtained” unless retroactivity principles require a different result. (People v Catalanotte, 72 NY2d 641, 645 [1988].)
It is first obvious that Catu does not “go to the heart of a reliable determination of guilt or innocence.” It does not speak to guilt or innocence at all. There is no reason to believe defendants who pleaded guilty without having PRS pronounced, for that reason entered pleas to crimes they did not commit. In this court’s experience, moreover, defendants in plea negotiations are focused on how much time they must serve, not on postrelease supervision.' PRS is certainly an important component of a sentence a defendant should be informed about. But there is no reason to believe the failure to inform defendants about postrelease supervision has somehow resulted in the conviction of the innocent. (See People v Menjivar, 2005 NY Slip Op 51451[U], *2 [stating the same conclusion].)
The two additional Pepper factors, in this court’s view, also weigh heavily against retroactivity. With respect to the second Pepper factor, “the extent of the reliance by law enforcement authorities on the old standard,” the reliance by defense attorneys, prosecutors and courts prior to 2014 on the validity of predicate felony convictions where PRS had not been properly pronounced was legitimate and apparently common. Defendant’s counsel here could not have been reasonably expected to predict that the First Department would apply Catu retroactively to void a conviction which at the time of the defendant’s instant sentence was 13 years old. As the People argue, de *270 fendant’s counsel was a member of “one of the most respected, professional and well-organized institutional defender services in the United States” (the Legal Aid Society).[11] He did not challenge the validity of the 2000 conviction because at the time of the instant sentence in 2013 there was nothing to challenge. As the People argue, “counsel’s lack of clairvoyance” cannot establish ineffectiveness. (Id.)
Indeed, the reliance issue here provides an unusually compelling argument against retroactivity because it does not concern merely the question of whether a newly announced rule should be applied retroactively. It concerns the question of whether a rule which was announced eight years earlier (the time between the Catu decision in 2005 and the defendant’s sentence in 2013) should be newly determined to apply retroactively. There is no way a competent attorney could have been expected to predict such a result.
The third Pepper factor, “the effect on the administration of justice of a retroactive application of the new standard,” also weighs heavily against retroactivity. The retroactive application of Catu to the legality of predicate felony convictions in cases like this completely eliminates the ability to sentence defendants as predicate felons because it provides no opportunity to correct Catu errors. The defendant’s 2000 sentence was completed long ago and her right to appeal has expired. It is clear that double jeopardy would bar the imposition of a new sentence in which a PRS term could be pronounced now. (See People v Williams, 14 NY3d 198 [2010]; People v Velez, 19 NY3d 642 [2012].) Penal Law § 70.85 allows the resentencing of defendants to determinate terms without PRS. Theoretically, the People might also move to vacate the 2000 conviction and then try the defendant on a 16-year-old indictment. But both of those options would also appear to be barred by double jeopardy or effectively foreclosed by other procedural or practical barriers.
The consequence, the inability to correct Catu errors which arise from the retroactive application of the decision to predicate felonies, is contrary to the goals the legislature and the Court of Appeals have repeatedly emphasized on the PRS issue. Penal Law § 70.85 was enacted to avoid the “chaos which would result from having a significant number of these convictions set aside.” (William C. Donnino, Practice Commentary, *271 McKinney’s Cons Laws of NY, Penal Law § 70.85.) In People v Sparber (10 NY3d 457 [2008]) the Court of Appeals held that a Catu error can ordinarily be appropriately cured by having the Court pronounce a resentence with an appropriate PRS term. The Court explained that the proposed remedy of resentencing a defendant with no PRS term “would leave defendants with a windfall that greatly exceeds any harm that they have purportedly suffered.” (Id. at 469.)
An even more anomalous result will occur here. Here, the court will sentence the defendant for her fourth felony conviction (or third, if the 2000 conviction in which PRS was not pronounced is excluded). Each conviction was for a violent felony or a felony in which violence (or the spitting of blood) was either completed or attempted. Each felony was committed in a different year. They occurred in four different New York counties (New York, Bronx, Oneida and Onondoga). They spanned a 13-year period, yet were all within less than 10 years of each other (including incarceration tolls), meaning that in other factual contexts they would comply with the se-quentiality requirements of the predicate felony statutes. Yet the court pursuant to the instant decision will now sentence the defendant as a first felony offender.
The resentence will also be anomalous in another respect. The instant sentence arose from a plea bargain in which the defendant obtained a highly favorable disposition. The defendant was charged with a violent felony (assault in the second degree) for which she faced a determinate sentence of up to seven years followed by five years of postrelease supervision. She faced a potential consecutive sentence on the same charge in the Bronx, making her maximum exposure a determinate term of 14 years followed by five years of postrelease supervision. She received an indeterminate 2-to-4-year term on a conviction for a nonviolent felony to run concurrently with the Bronx conviction. The People may not have made that bargain, however, if they knew the defendant would be sentenced as a first felony offender with a lower sentence.
Thus, the instant decision will not result in a neutral ex-pungement of the Catu illegality, leaving the parties otherwise whole. It will alter the contract the parties and the court agreed to in a manner the People never endorsed and now have no chance to revise. It will negate the predicate felony sentencing statute the legislature enacted to ensure that defendants convicted of multiple felonies face enhanced punishment. The *272 party who will lose will be the People. The People, however, in this case, did nothing wrong. Meanwhile, what was perhaps the most glaring illegality with respect to the 2000 sentence: the fact that the defendant was given a determinate term more than one third less than the law required, will have no impact here.
Applying Catu retroactively to postjudgment motions is also incongruous because Catu claims with respect to the invalidity of a sentence must generally be raised on direct appeal and cannot be raised through a postjudgment motion. (People v Stewart, 16 NY3d 839 [2011].) The twin decisions of the Second and First Departments (concerning the same defendant) in People v Odom (61 AD3d 896 [2d Dept 2009], lv denied 13 NY3d 747 [2009]) and Odom II are also instructive with respect to ordinary Catu predicate procedural bars. In the Odom cases, the defendant pleaded guilty in 2000 without a PRS pronouncement but did not raise the issue on direct appeal. That conviction was then used as a predicate to enhance a 2006 sentence but the defect was not raised during the predicate adjudication proceeding. When the defendant then raised the Catu issue on a direct appeal from the 2006 sentence, the Second Department denied the claim, holding the defendant was required to raise the 2000 Catu defect at the time of the 2006 predicate proceeding.
When the First Department considered the defendant’s appeal of a second sentencing in 2007 which relied upon the defective 2000 predicate, it also denied the claim, finding the 2006 predicate adjudication precluded a sentencing challenge based on the 2000 conviction. “Where a defendant fails to challenge the constitutionality of a prior conviction at the appropriate time, and fails to demonstrate good cause for such failure, he waives any future challenge to the constitutionality of the prior conviction for sentence enhancement purposes.” (Odom II, 63 AD3d at 409.) As noted, supra, the First Department also addressed the Cai ¿¿-retroactivity issue in Odom II, noting that the Second Department had “declined defendant’s invitation to retroactively apply Catu to recidivist sentencing proceedings, as do we.” (Id. [emphasis added].) The upshot appears to be that today, under Stewart, a defendant cannot generally bring a postjudgment motion to challenge the validity of a sentence based on a Catu error. But under Smith and Fagan, a defendant can bring such a motion to challenge the validity of previously imposed predicate conviction used to enhance a sentence *273 (in this case, a conviction which occurred 16 years ago) without any demonstration that such a claim could not have been timely raised.
There is also a second important consideration with respect to the third Pepper factor. Catu itself obviously unleashed a torrent of motions and years of litigation and continuing uncertainty over the consequences of pleas and sentences in which PRS was not pronounced. Applying the decision retroactively, however, has spawned significant additional litigation. This court’s own anecdotal knowledge suggests the Smith/Fagan cases are leading to motions to vacate sentences in many criminal trial courts in New York County. Even with respect to this one defendant, the rule has resulted in motions to vacate sentences in two cases (this one and, as discussed infra, the defendant’s Bronx conviction).
Under Smith and Fagan, it would appear that any defendant who has a predicate conviction after 1995 (when PRS was first imposed) where a PRS term was not pronounced can challenge the legality of that prior conviction through a postjudgment motion when it was used to enhance a subsequent sentence if the attorney at the subsequent sentencing proceeding did not challenge the predicate and had no strategic reason for not doing so. The range of potential procedural barriers to such motions has yet to be fully litigated. Such motions would not appear to be impacted, however, by: (i) whether the failure of a defendant to be informed about PRS would have had any impact on a predicate plea; (ii) whether the validity of that predicate could have been contested at the predicate plea or sentencing or on a direct appeal from that judgment; (iii) whether the issue could have been raised during an instant sentencing or the instant sentencing’s direct appeal; or (iv) whether an attorney’s overall representation was in fact ineffective. There is also no time limit on CPL 440.20 resentenc-ing motions.
The Province court analyzed these retroactivity issues differently. That court also found that the use of a Catu error to invalidate a predicate conviction at an instant sentencing which postdated Catu (as here) in an important sense did not present a retroactivity question at all, because in such circumstances the Catu error is used to modify a sentence in a post-Catu proceeding. That is an interesting point, but this court does not find it persuasive. The Smith Court itself (in a decision which postdated Province) held that “the rule of law *274 announced in Catu applies retroactively to pre-Catu convictions.” (132 AD3d at 512 [emphasis added].)
It is finally instructive to consider landmark constitutional decisions which have not been given retroactive application and contrast them with the stakes involved in Catu errors. In Teague v Lane, the United States Supreme Court declined to give retroactive effect to its landmark decision to combat racial discrimination in jury selection in Batson v Kentucky (476 US 79 [1986]). In Chaidez v United States (568 US —, 133 S Ct 1103 [2013]) and People v Baret, the United States Supreme Court and the New York Court of Appeals declined to retroactively apply the seminal holding in Padilla v Kentucky (559 US 356 [2010]) requiring attorneys to provide pleading criminal defendants with immigration advice, eliminating potentially life-changing claims which could otherwise have been made by countless thousands of noncitizens who have been deported from the United States. Landmark United States Supreme Court decisions prohibiting warrantless searches in homes, improper jury charges and prosecutorial comments on a defendant’s failure to testify have, suffered a similar fate. (See People v Catalanotte, 72 NY2d at 646.) As detrimental as Catu errors are, they pale in significance to the due process deficiencies which have been addressed by numerous holdings which have not been applied retroactively.
The Defendant May Receive No Benefit from This Decision
It is finally not clear the defendant will receive any benefit from this decision. The conviction which is now being vacated, as noted supra, was imposed concurrently to a second attempted assault conviction in the Bronx. This court might be entitled to similarly order a new sentence to run, nunc pro tunc, concurrently to the previous Bronx conviction. But it is not clear that would be required. Were this court to order the new sentence it imposed to run consecutively to the prior Bronx sentence, the granting of the instant motion might result in a longer incarceration term.
The benefit which would arise here is further not clear because, were this court to again impose a concurrent sentence to the Bronx term, the concurrent Bronx term would still run for two to four years, presumably eliminating any benefit the defendant might receive from a resentencing here. Defendant indicates she has moved to vacate her predicate felony sentence for the Bronx conviction under the same legal theory advanced here and that this motion is pending. To receive any potential *275 benefit from a resentencing here, then, this court would have to again impose a concurrent sentence to the Bronx case, that Bronx sentence would have to be vacated by a different court and that second court would have to order a new sentence of less than two to four years.
Even if -all of these contingencies broke in the defendant’s favor, she might still obtain no custodial benefit from a resentencing. Such a benefit might accrue if this court sentenced Ms. Dennis to less than the first felony offender maximum term of IV3 to 4 years which would be available now. This court will certainly consider such an option at defendant’s resentencing. But were this court to simply substitute the maximum first felony sentence of IV3 to 4 years for the maximum second felony sentence of 2 to 4 years, the defendant would still have the same maximum sentence. The potential benefit would be in a minimum term which was two thirds of a year less than the previous term. This would make the defendant eligible for parole or other early release options sooner and accelerate the “conditional release” date on which she would be released after serving two thirds of her maximum sentence, presuming she earned good time.
Ms. Dennis, however, was convicted of a felony during her current prison term for spitting blood at a corrections attendant. Her instant conviction arose from an assault on a nurse at a hospital. Her Bronx conviction arose from another assault at a jail. The custodial benefit which might arise from the instant decision would depend on the extent to which parole or corrections authorities would grant her parole, work release (or similar allowances) or good time. The defendant’s institutional criminal history, however, might well foreclose any such relief. Thus, the defendant might see no practical custodial benefit in this case by being sentenced as a first felony offender, even if such a benefit was not foreclosed for other reasons.
Even if the defendant surmounted all of these barriers, the Court of Appeals has granted leave in Smith. The People have indicated they will argue to the Court that Smith was wrongly decided. Were the Court of Appeals to reverse Smith, however, this court might then have to vacate its instant decision. To the extent the defendant received any custodial benefit from the instant decision, she might then have to be reincarcerated to finish her original term. It is clear that the instant case and others in a similar posture have and will continue to consume *276 significant resources. This court is dubious, however, that this litigation will result in a constructive outcome for anyone.[12]
For all of those reasons, defendant’s motion is granted and the instant sentence is vacated.

. People’s May 2, 2016 response to defendant’s motion (People’s response) ¶5.

. An ineffective assistance of counsel claim was raised in Catu but that claim was not addressed by the Court of Appeals.

. The court has used the shorthand “Smith/Fagan cases” to describe the First Department’s combined holdings in Smith, Fagan, Fagan II, Agard and Lara.

. As an alternative to granting defendant’s motion, the People ask this court to order an evidentiary hearing to determine whether defendant’s counsel provided ineffective assistance. Such a hearing might be appropriate if this court viewed the Smith/Fagan cases as requiring a fact-specific determination on the ineffectiveness issue, as Justice Obus implicitly found. In this court’s view, however, the Smith/Fagan cases have imposed a per se rule that the failure to challenge a Catu-defective predicate conviction without a strategic reason constitutes the ineffective assistance of counsel. Given this court’s view on that issue, holding an evidentiary hearing would be pointless. There is no dispute that defense counsel made no effort to investigate or challenge the 2000 conviction and had no strategic reason for not doing so.

. That statute applies to predicate offenses used to adjudicate a defendant as a second violent felony offender. The same requirement is repeated in other predicate offender statutes. (See CPL 400.16, 400.19 [6] [c]; 400.20 [6]; 400.21 [7] [b].)

. This statute was specifically enacted to address the holding of the Court of Appeals in People v Sparber (10 NY3d 457 [2008]) that remittal for resentencing was required where mandatory PRS was not imposed at the original sentencing. The statute provides, inter alia, that with the consent of the prosecution, defendants improperly sentenced between September 1, *264 1998 and the statute’s enactment without a court PRS pronouncement can be resentenced to the same prison term without PRS.

. The Province court did not find this statement persuasive, concluding it was both dicta and apparently overruled by People v Pignataro. While there is a reasonable argument this statement was dicta, this court does not agree that Alvarado was overruled by People v Pignataro. While the brief Alvarado decision did not describe the error in the case as a Catu violation, Justice Kahn did describe it that way, presumably based on research she conducted beyond the face the Alvarado decision itself.

. Even where a federal constitutional rule is “new,” it should still be applied retroactively in two very limited situations. (People v Baret, 23 NY3d at 795.) The first is where a new rule “places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.” (Teague v Lane, 489 US at 311 [internal quotation marks omitted]; People v Eastman, 85 NY2d 265, 275 [1995].) The second is where “the new rule alters a bedrock procedural element of criminal procedure which implicates the fundamental fairness and accuracy of the trial.” (Id., citing Teague v Lane, 489 US at 311-312.) Teague held that this second exception should be limited to “those new procedures without which the likelihood of an accurate conviction is seriously diminished.” (489 US at 313.) Even assuming Catu implemented a federal constitutional right, neither of these exceptions would apply here. (See generally People v Baret, 23 NY3d at 795-798.)

. In addition to Fagan, the Province court cited People v Pignataro and People v Santiago (91 AD3d 438 [1st Dept 2012]) as supporting the retroactive application of Catu to predicate felony convictions. Santiago reversed the trial court’s denial of a CPL 440.20 motion alleging a Catu error applicable to a pve-Catu predicate conviction which was used to enhance the defendant’s sentence. But the First Department reached that conclusion because it held the claim did not have to be raised on direct appeal, as the trial court had found. The Santiago Court found it was procedurally barred from considering the argument that “a Catu issue should not affect the constitutionality, for predicate felony purposes, of defendant’s 2004 conviction.” (91 AD3d at 439.)

. People’s response ¶ 21.

. That is not intended as a criticism of defendant’s attorney, who is justifiably pursuing a valid claim which might benefit her client. Both attorneys in this case did an excellent job briefing and arguing the issues here.