OPINION OF THE COURT
Pigott, J.
At the time of its enactment in 1998, Penal Law § 70.45 (1) (as added by L 1998, ch 1, § 15) provided that “[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision” (PRS). A substantial number of trial courts mistakenly interpreted the provision to mean that PRS arose as a matter of law and did not need to be pronounced at sentencing.[1] Thereafter, in People v Catu (4 NY3d 242 [2005]), we held that PRS “is a direct consequence of a criminal conviction” such that a court accepting a guilty plea from a defendant must ensure that the defendant is aware of the PRS component of his sentence in order for the defendant “to knowingly, voluntarily and intelligently choose among alternative courses of action” (id. at 244-245). We explained *196 that “[although the court is not required to engage in any particular litany when allocuting the defendant, ‘due process requires that the record must be clear that the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant’ ” (id. at 245, quoting People v Ford, 86 NY2d 397, 403 [1995]). Therefore, a defendant who is not apprised of the PRS component is entitled to reversal of the conviction and automatic vacatur of the plea, and the defendant is not required to demonstrate that he would not have pleaded guilty had he been aware of the PRS component (Catu, 4 NY3d at 244-245).
On these appeals, neither defendant Smith nor defendant Fagan was apprised by the court of the PRS component relative to the sentence imposed on their guilty pleas entered in January 2002 and May 2000, respectively. They brought post-conviction motions to challenge their Catu-infected pleas and convictions that were utilized later to enhance sentences for subsequent crimes, essentially seeking retroactive application of Catu to disqualify their predicate offenses. In each case, defendant was satisfied with the plea and does not now claim innocence. Rather, because a subsequent crime has predicate felony implications, defendants challenged the use of their earlier convictions as “unconstitutionally obtained” on the ground that they were not apprised of the PRS component of their sentence. Although each defendant’s challenge to the use of the Catu-infected conviction originated under the guise of an ineffective assistance of counsel claim, the primary issue that we must decide is whether, pursuant to either federal or state retroactivity principles, Catu applies retroactively in enhanced sentence proceedings. We hold that it does not, and, therefore, reverse the orders of the Appellate Division in each appeal.
I.

People v Smith

In November 2001, defendant Roni Smith pleaded guilty to the violent felony of robbery in the first degree (Penal Law §§ 70.02 [1]; 160.15 [4]) in satisfaction of all counts in the indictment. The trial court failed to advise defendant that his sentence also included a mandatory term of PRS.[2] In January 2002, he was sentenced to a determinate term of seven years’ *197 imprisonment. According to defendant, he filed a timely notice of appeal,[3] but it appears that such appeal was never perfected.
In April 2007, one year before his seven-year term of imprisonment expired, defendant was conditionally released and the Department of Corrections and Community Supervision (DOCCS) administratively imposed a sentence of five years’ PRS pursuant to Penal Law § 70.45 (1). While defendant was serving his administratively-imposed PRS term, we held that PRS sentences must be “pronounced” by the court pursuant to CPL 380.20 and 380.40 and may not be administratively imposed (Matter of Garner v New York State Dept. of Correctional Servs., 10 NY3d 358 [2008]; see People v Sparber, 10 NY3d 457 [2008]).
On October 14, 2008, the sentencing court held a resentenc-ing proceeding pursuant to Correction Law § 601-d.[4] At that point, defendant had served 18 months of PRS. The court stated that it was unsure if it had previously advised defendant of the PRS term because it did not have the minutes. Defendant stated that he would accept a minimum PRS term— 2V2 years—and that if the People agreed, defendant “would waive waiting for the actual minutes to arrive and waive any claims he had with respect to the plea without the court reimposing the sentence again with the actual term of [PRS] as part of the sentence, nunc pro tunc.” The court then sentenced defendant to seven years’ imprisonment with the minimum 2V2 year term of PRS, nunc pro tunc to January 2002. So, as of that date, defendant, for the second time, pleaded guilty to robbery in the first degree, was advised of PRS and served his PRS sentence, which expired on October 23, 2009.
In December 2010, he was indicted on two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b]; [3]) for an incident that occurred on November 17, 2010. He pleaded guilty to the first count of the indictment in satisfaction of both counts. Prior to allocution, the People filed a statement of predicate violent felony conviction (Penal Law § 70.04; CPL 400.15) that utilized defendant’s January *198 2002 first-degree robbery conviction as a predicate offense. At the plea proceeding, defendant stated that he was the same person mentioned in the statement and that he did not wish to challenge the constitutionality of his prior conviction. The court adjudicated defendant a second violent felony offender. At the June 6, 2012 sentencing proceeding, defendant was sentenced to a determinate seven-year term of imprisonment with five years’ PRS.[5]
In June 2014, defendant made a motion to set aside his sentence pursuant to CPL 440.20 (1) on the ground that defense counsel at his 2012 sentencing was ineffective for not challenging the 2002 predicate conviction, which, according to defendant, was obtained in violation of Catu. Defendant argued that his predicate conviction was "unlawfully obtained” under CPL 400.15 (7) (b)[6] because defense counsel failed to investigate the predicate conviction and lacked a strategic basis for not doing so. He sought vacatur of his 2012 sentence, disqualification of his 2002 robbery conviction as a predicate offense, and resentencing as a first violent felony offender.
Defendant supported the motion with an affirmation of defense counsel who represented defendant relative to the 2012 conviction. Counsel explained that he failed to investigate the proceedings that led to the 2002 conviction, and he did not ask defendant if the court had apprised defendant of PRS. He was unaware that the predicate conviction had been unconstitutionally obtained at the time of defendant’s arraignment on the predicate felony, and maintained that, had he known about the Catu error, he would have challenged the predicate conviction as “unconstitutionally obtained” and defendant would not have been adjudicated a second violent felony offender.
The People opposed the motion, claiming that a Catu error does not rise to the level of a federal constitutional violation and that Catu did not apply retroactively to convictions that had become final prior to the Catu decision.
*199 Supreme Court, relying on People v Fagan (116 AD3d 451 [1st Dept 2014]), granted defendant’s motion, holding that he was deprived of the effective assistance of counsel due to counsel’s failure to challenge the predicate conviction. As relevant here, Supreme Court determined that Catu applied retroactively. The court resentenced defendant as a first felony offender to seven years’ imprisonment with five years’ PRS.
The Appellate Division modified the judgment by reducing defendant’s sentence to a term of six years’ imprisonment with five years’ PRS, but otherwise affirmed (132 AD3d 511, 511 [1st Dept 2015]). Pointing to CPL 400.15 (7) (b), the Court held that
“[b]ecause a conviction obtained in violation of Catu implicates rights under the federal Constitution as well as the state constitution, the [motion] court properly granted defendant’s CPL 440.20 motion and vacated his sentence as a second violent felony offender on the ground that his 2002 conviction could not be counted as a predicate felony under CPL 400.15 (7) (b)” (id. at 511-512 [citations omitted]).
Moreover, the Court held that although the 2002 conviction preceded the Catu decision, “the rule of law announced in Catu applies retroactively to pre-Catu convictions” (id. [citations omitted]).
A Judge of this Court granted the People leave to appeal.
HH HH

People v Fagan

On April 18, 2000, defendant Keith Fagan pleaded guilty to attempted robbery in the first degree.[7] The following month, he was sentenced as a second felony offender to a determinate term of seven years’ imprisonment. The court did not apprise defendant at sentencing that he was subject to a mandatory term of PRS.
Defendant was released from prison in March 2006 and DOCCS administratively imposed a five-year PRS sentence. On January 28, 2009, defendant appeared for a Correction Law § 601-d hearing. At the hearing, the court acknowledged *200 that the administratively-imposed PRS was illegal, and, to remedy the illegality, resentenced defendant to a seven-year determinate sentence with five years’ PRS nunc pro tunc to the original sentencing date of May 23, 2000.
In February 2009, defendant was charged in a 12-count indictment with committing various offenses, including robbery and grand larceny. While defendant was awaiting trial on that indictment, Supreme Court vacated defendant’s PRS term that had been imposed at the January 28, 2009 resentencing in light of People v Williams (14 NY3d 198 [2010], cert denied 562 US 947 [2010]), in which we held that “after release from prison, [there is] a legitimate expectation in the finality of a sentence [that] arises and the Double Jeopardy Clause prevents reformation to attach a PRS component to the original completed sentence” (Williams, 14 NY3d at 217).
In June 2010, defendant proceeded to trial on the February 2009 indictment. In the middle of trial, however, he pleaded guilty to the lesser included offense of attempted robbery in the first degree in satisfaction of all 12 counts in the indictment. He was arraigned as a persistent violent felony offender based on two prior felonies—a 1980 conviction for criminal sexual act in the first degree and the May 2000 attempted robbery conviction. Defendant admitted that he was the person named in the persistent violent felony information filed by the People, and did not challenge any of the allegations contained therein. On July 6, 2010, he was sentenced as a persistent violent felony offender to 18 years to life imprisonment.
In January 2013, defendant moved for an order setting aside his sentence pursuant to CPL 440.20 (1) on the ground that his adjudication as a persistent violent felony offender was illegally imposed and invalid because his May 2000 attempted robbery conviction was “unconstitutionally obtained” under Catu and could not serve to enhance his sentence. He also claimed that his counsel was ineffective for not challenging the People’s use of the May 2000 conviction as a predicate offense. In an affirmation submitted in support of the motion, defense counsel who was present at the July 2010 sentencing acknowledged that he did not challenge the May 2000 conviction as unconstitutionally obtained and did not ask defendant whether the court had apprised him of the PRS component prior to his pleading guilty, and stated that, had he been aware that defendant’s May 2000 conviction had been obtained without defendant having been apprised of the PRS component, he would have challenged the prior conviction.
*201 The People countered that the Williams vacatur and defendant’s 2010 resentencing that excised the PRS component rectified the Catu error and gave defendant what he had bargained for in 2000 when he pleaded guilty, such that the May 2000 conviction was not “unlawfully obtained.” They argued that defendant’s counsel at the 2010 plea proceeding could not have been ineffective for failing to raise a frivolous claim.
Defendant responded by arguing that although the Williams vacatur effectively removed one year from the five-year PRS term (four of which he had served), that action did not cure the Catu error.
Supreme Court denied defendant’s motion in its entirety. The Appellate Division reversed and granted defendant’s motion, holding that defense counsel was ineffective for not challenging the constitutionality of the May 2000 conviction at the sentencing proceeding (116 AD3d 451, 451 [1st Dept 2014]). Relying on defense counsel’s affirmation, the Court stated that “this was not a case where an attorney may have reasonably believed that it would have been futile to raise a Catu issue regarding the constitutionality, for predicate felony purposes, of defendant’s 2000 conviction, or that the law was unclear on this issue” (id. at 452). As such, according to the Court, defendant was “entitled to have his persistent felony offender status litigated with proper assistance of counsel, at a new adjudication and sentencing” (id.).
On remand, Supreme Court, utilizing only the 1980 predicate conviction, sentenced defendant as a second violent felony offender to a 15-year determinate term with five years’ PRS. The People filed a notice of appeal.
The People also moved pursuant to CPL 440.40 for an order to set aside defendant’s sentence and adjudicate defendant a persistent violent felony offender. Supreme Court denied the motion. The People filed a timely notice of appeal. The People’s appeals from the judgment of resentence and the denial of the People’s CPL 440.40 motion were consolidated.
The Appellate Division heard the consolidated appeals and unanimously affirmed, holding, as relevant here, that a Catu violation implicates both the State and Federal Constitutions, and that although the Catu error occurred in 2000—well before the Catu decision in 2005—the Catu decision applied retroactively (134 AD3d 411, 412 [1st Dept 2015]).
A Judge of this Court granted the People leave to appeal.
*202 I—\ hH h—\
CPL 400.15 (7) (b) and Federal Retroactivity
In order to establish that a defendant is a second violent felony offender under CPL 400.15 (7) (a), the People must prove beyond a reasonable doubt that the defendant was convicted of the predicate violent felony offense in question. Once that burden is met, the burden shifts to the defendant to establish that the prior conviction was “unconstitutionally obtained” (CPL 400.15 [7] [b]). CPL 400.15 (7) (b) provides that “[a] previous conviction in this or any other jurisdiction which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States must not be counted in determining whether the defendant has been subjected to a predicate violent felony conviction” (emphasis supplied).
Defendants contend that their Caiw-infected convictions that predated our Catu decision were unconstitutionally obtained under CPL 400.15 (7) (b) and therefore cannot be utilized as predicate convictions to enhance their sentences. Because these appeals involve postconviction attacks on defendants’ respective prior convictions,[8] we begin our analysis with People v Catalanotte (72 NY2d 641 [1988], cert denied 493 US 811 [1989]). That case addressed whether the defendant’s sentence as a second felony offender could be predicated on a prior conviction that “satisfied constitutional standards when obtained and ha[d] survived postconviction collateral attack, but was obtained by means which, if the indictment were tried [at present], would violate [the] defendant’s rights [to a public trial] under the Sixth Amendment of the United States Constitution” {id. at 643).
In Catalanotte, the defendant unsuccessfully claimed on direct appeal that he had been deprived of his right to a public trial when the trial judge summarily excluded spectators from the courtroom during the testimony of an undercover officer *203 (see id,.). Years after the defendant’s appeal had become exhausted, this Court held in another case that it was reversible error for a court to summarily close the courtroom simply because a witness was an undercover police officer (see id. at 643-644, citing People v Jones, 47 NY2d 409, 414-415 [1979], cert denied 444 US 946 [1979]).
In 1986, the defendant pleaded guilty to attempted robbery in the second degree, and the court adjudicated the defendant a second felony offender utilizing the 1971 conviction as a predicate over the defendant’s objection that the 1971 conviction was “unconstitutionally obtained” under People v Jones (Catalanotte, 72 NY2d at 644). The defendant argued on appeal to this Court for the application of the Jones rule to prevent the enhanced punishment for the 1986 conviction, claiming that the prior conviction had been “unconstitutionally obtained” (id.). We began our analysis by setting forth the pertinent rule, namely, that
“for purposes of determining whether a prior conviction ‘was unconstitutionally obtained’ [under CPL 400.21 (7) (b)[9]]—and thus may not be counted for predicate felony purposes—the proper inquiry is to determine whether the conviction was obtained in violation of the defendant’s rights as defined by the law at the time of the conviction or by present law which is properly applied to it under recognized principles of retroactivity” (id. at 643).
We explained that the clear import of the phrases “was obtained” and “was unconstitutionally obtained” under CPL 400.21 (7) (b) necessarily indicated that the validity of the conviction must “be determined as of the time it was entered,” and that an unconstitutional conviction is one that is “obtained in violation of the defendant’s constitutional rights, i.e., his rights as defined by the law existing at the time the conviction was obtained or by subsequent law applicable to the judgment under principles of retroactivity” (id. at 644-645). Significantly, we noted that a “conviction does not become unconstitutional merely because the law has changed subsequent to the defendant’s direct appeal of that conviction” (id. at 645). As relevant here, we held in Catalanotte that
*204 “[sjince the predicate felony statute operates upon the prior conviction rather than the prior practice, accepted principles of retroactivity must be applied to determine whether a conviction ‘was unconstitutionally obtained’ and thus may not be counted when the People seek to impose an enhanced sentence. Under those rules, a defendant is entitled to the benefit of any change in the law if the change occurs before his conviction becomes final or, if the right at stake is such that the law has engrafted an exception to the traditional rule to permit collateral attack on judgments of conviction after they have become final” (id. at 645 [citations omitted and emphasis supplied]).
Applying that rule, we held that the 1971 conviction met neither criteria, noting that the court’s closure of the courtroom in 1971 had complied, at that time, with the existing legal requirements for a public trial (see id. at 645), and, while this Court had eventually declared a similar procedure unconstitutional, it did not make the Jones rule retroactive, nor did it require a finding that the predicate conviction had been "unconstitutionally obtained” (id. at 645-646). We explained that “[t]he logic of such an interpretation is manifest when one considers that the proper meaning to be given to broadly stated constitutional commands, such as due process of law and right to a public trial, changes constantly” (id. at 646 [emphasis supplied]).
Applying the first Catalanotte rule here, i.e., that a prior conviction may not be counted for predicate felony purposes if “the conviction was obtained in violation of the defendant’s rights as defined by the law at the time of the conviction” (Catalanotte, 72 NY2d at 643), it is evident that the law at the time of defendants’ respective predicate convictions in 2002 and 2000 did not require automatic vacatur for a court’s failure to pronounce PRS. Although at the time of defendants’ predicate convictions the law required a defendant be informed of the direct consequences of a guilty plea, i.e., those that have “a definite, immediate and largely automatic effect on [a] defendant’s punishment” (Ford, 86 NY2d at 403), the law also required that defects in plea allocutions could not result in a reversal absent a showing of prejudice (see People v Nixon, 21 NY2d 338, 355 [1967], cert denied 393 US 1067 [1969] [“It should never be enough to undo a plea because of some omission in inquiry at the time of plea without a showing of *205 prejudice”]). Indeed, in the PRS cases that preceded our Catu decision, the Appellate Division Departments required a showing of prejudice (see e.g. People v Mason, 2 AD3d 272, 272-273 [1st Dept 2003], lv denied 1 NY3d 630 [2004] [direct appeal]; People v Ballinger, 12 AD3d 686, 688 [2d Dept 2004] [CPL 440.10 motion]; People v Bonilla, 6 AD3d 1059, 1060 [4th Dept 2004] [CPL 440.10 motion] [relying on Nixon]; see also People v Melio, 304 AD2d 247, 252 [2d Dept 2003] [direct appeal]).[10]
And, in People v Catu (2 AD3d 306 [1st Dept 2003], revd 4 NY3d 242 [2005]), the Appellate Division specifically held that the defendant, who made his motion pursuant to CPL 440.10, was not entitled to plea vacatur because he failed to show that had he known of the PRS component he would not have pleaded guilty (see id. at 306). In support of that contention, the Appellate Division relied on United States v Timmreck (441 US 780 [1979]). In that case, the United States Supreme Court held that a defendant was not entitled to vacatur of his sentence because the District Court had failed to apprise him at the time of his plea that his prison sentence also included a three-year mandatory minimum special parole term, noting that the defendant did not argue that he was unaware of the mandatory term or that he would not have pleaded guilty had the judge apprised him of the mandatory term (see id. at 783-784).[11]
In light of the foregoing, neither defendant Smith’s nor Fa-gan’s conviction was obtained in violation of the law as it existed at the time of their respective convictions. Both state and federal law required that a defendant demonstrate that he would not have pleaded guilty had he known about a mandatory term of his sentence. It was not until our 2005 decision in Catu that a defendant was entitled to automatic vacatur.
Nor does application of the second Catalanotte rule—that a prior conviction may not be used as a predicate conviction where the conviction was obtained in violation of “present law *206 which is properly applied to it under recognized principles of retroactivity” (Catalanotte, 72 NY2d at 643)—lend support to defendants’ argument that they should be permitted to mount a postconviction challenge to a final predicate conviction. CPL 400.15 (7) (b) expressly refers to challenges of previous convictions “obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States,” but, assuming for the purposes of this appeal that CPL 400.15 (7) (b) applies to violations of the New York Constitution, neither state nor federal retroactivity principles would permit these defendants to mount a postconviction attack on their predicate convictions.[12]
Because defendants Smith and Fagan claim that their prior convictions were “unconstitutionally obtained” under the Unites States Constitution, we will first address the application of federal retroactivity rules to the instant appeals.
In Teague v Lane (489 US 288 [1989]), the United States Supreme Court, in addressing the issue of retroactivity for cases on collateral review, recognized that, “[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced” (id. at 310; see Whorton v Bockting, 549 US 406, 416 [2007] [under Teague, an old rule will apply on direct and collateral review, whereas a new rule applies to only cases that are still on direct review]). That holding raises the pertinent question as to what constitutes a “new rule” for purposes of retroactivity analysis. The Teague court explained that “a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant’s conviction became final” (Teague, 489 US at 301 [citations omitted]).[13] A result is not deemed “dictated by precedent,” however, unless it would have been “apparent to all reasonable jurists” (Lambrix v Singletary, 520 US 518, 527-528 [1997]).
*207 As with most rules, there are exceptions. As relevant here, a new rule will be applied retroactively if it is a “watershed rule[ ] of criminal procedure” that implicates “the fundamental fairness and accuracy of the criminal proceeding” (see Saffle v Parks, 494 US 484, 495 [1990], citing Teague, 489 US at 311).[14] This exception is limited “to those new procedures without which the likelihood of an accurate conviction is seriously diminished” (Teague, 489 US at 313). Absent an applicable exception, “[a]ll other new rules of criminal procedure must be applied in future trials and in cases pending on direct review, but may not provide the basis for a federal collateral attack on a state-court conviction” (Danforth v Minnesota, 552 US 264, 266 [2008] [summarizing the Teague rule]).
Defendants contend that our opinion in Catu merely applied the well-established constitutional principle that a defendant must be apprised of the direct consequences of his or her plea in order for the plea to meet the “knowing, intelligent and voluntary” requirement (Ford, 86 NY2d at 403). To that end, defendants are partially correct, since prior to the Catu decision, Penal Law § 70.45 (1) required that “[e]ach determinate sentence . . . include [ ], as a part thereof, an additional period of [PRS] ” (emphasis supplied). All four Appellate Division Departments were in agreement that PRS was a direct consequence of a guilty plea (see Ballinger, 12 AD3d at 687-688; Bonilla, 6 AD3d at 1060; Mason, 2 AD3d at 272-273; Goss, 286 AD2d at 184). However, Catu did more than simply apply a long-held constitutional principle to a new circumstance—it created a new rule calling for automatic vacatur of the plea without requiring the defendant to demonstrate prejudice, which plainly differed from prior law (see Nixon, 21 NY2d at 355 [“It should never be enough to undo a plea because of some omission in inquiry at the time of plea without a showing of prejudice”]). Significantly, the Appellate Division’s Catu decision focused on the prejudice component (2 AD3d at 306), and did not address the issue whether PRS was a direct consequence of a plea, which, by that point, was well established among the four Appellate Division Departments. Therefore, our determination in Catu announced a new rule that a defendant who is not apprised of PRS need not demonstrate *208 prejudice in order to obtain a reversal and plea vacatur, and given the state of the law pre-Catu, our determination in Catu was most certainly not dictated by precedent.
Nor does Catu fall within an applicable recognized exception that would permit a new rule to be retroactively applied on collateral attack because it did not constitute a “watershed rule[ ] of criminal procedure,” i.e., it is not a “ ‘new procedure[ ] [of fundamental fairness] without which the likelihood of an accurate conviction is seriously diminished’ ” (People v Baret, 23 NY3d 777, 784 [2014], cert denied 574 US —, 135 S Ct 961 [2015], quoting Teague, 489 US at 311, 313). The United States Supreme Court has stated that this particular exception is an “extremely narrow” one (Schriro v Summerlin, 542 US 348, 352 [2004]), and has repeatedly analogized such a rule to the right to counsel established by Gideon v Wainwright (372 US 335 [1963]) (see Whorton, 549 US at 419 [rejecting retroactive application of Crawford v Washington (541 US 36 [2004])]; Teague, 489 US at 311-312; see also Schriro, 542 US at 355-356 [rejecting retroactive application of Ring v Arizona (536 US 584 [2002])]). Gideon—which held that counsel must be appointed for any indigent defendant charged with a felony—is the lodestar case for this exception because “[w]hen a defendant who wishes to be represented by counsel is denied representation . . . , the risk of an unreliable verdict is intolerably high” (Whorton, 549 US at 419 [citations omitted]).
In order to apply a new “watershed rule” retroactively, the rule must meet two requirements, namely, it “must be necessary to prevent an impermissibly large risk of an inaccurate conviction . . . [and it] must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding” (Whorton, 549 US at 418 [citations and internal quotation marks omitted]). The latter requirement mandates that the new rule “constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding,” and the United States Supreme Court has “looked to the example of Gideon” in analyzing the requirement {id. at 421).
Our Catu “automatic vacatur” rule did not constitute such a “watershed rule” comparable to the determination in Gideon. Catu was not necessary to prevent an impermissibly large risk of an inaccurate conviction, and it is doubtful that the failure of the courts to apprise defendants Smith and Fagan of the PRS component resulted in them pleading guilty to crimes that *209 they did not commit. Indeed, when presented with their prior convictions, defendants Smith and Fagan acknowledged that they were the individuals mentioned in the predicate felony statements filed by the People, and that they did not wish to challenge any of the allegations contained within their respective statements.
Similarly, Catu’s automatic vacatur rule did not “alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding” (Whorton, 549 US at 420, quoting Sawyer v Smith, 497 US 227, 242 [1990]). To be sure, although Catu is a significant decision that created a rule that called for automatic vacatur of convictions where a defendant is not apprised of the PRS component of the sentence, the rule itself is not on par with Gideon. Indeed, as noted above, the federal rules do not call for automatic vacatur, but require a defendant to show that an error during the plea proceeding affected the defendant’s decision to plead guilty (see Westcott, 159 F3d at 112-113; Caputo, 541 F2d at 984).
IV.
State Retroactivity
Assuming for the sake of this appeal only that CPL 400.15 (7) (b) allows a defendant to challenge a predicate conviction obtained as a violation of his state constitutional right, state retroactivity principles militate against a retroactive application of Catu. In People v Pepper (53 NY2d 213 [1981], cert denied 454 US 967 [1981]), this Court adopted a three-part test to assist in determining whether a new precedent should be afforded a retroactive application (id. at 220). We explained that courts should weigh and examine (1) “the purpose to be served by the new standards”; (2) “the extent of the reliance by law enforcement authorities on the old standards”; and (3) “the effect on the administration of justice of a retroactive application of the new standards” (id.). The second and third factors are given substantial weight only “when the answer to the retroactivity question is not to be found in the purpose of the new rule itself” (id. [citation omitted]). “Thus, where otherwise there could be a complete miscarriage of justice, current constitutional standards that go to the heart of a reliable determination of guilt or innocence have been substituted for those in effect at the time of trial” (id. at 221). As a general rule, the Pepper rules “disfavor retroactivity” (Baret, 23 NY3d at 799).
*210 In Pepper, we were asked to determine the retroactivity of our holding in People v Samuels (49 NY2d 218 [1980]), where “we held that once an accusatory instrument has been filed a defendant cannot waive his constitutional right to counsel save in the presence of counsel” (Pepper, 53 NY2d at 217, citing Samuels, 49 NY2d 218). Incidentally, we held in Pepper that Samuels retroactively applied to defendants whose direct appeals were not final at the time it was decided; however, we refused to apply it to those defendants who had exhausted their direct appeals, noting “only complete retroactivity could make Samuels applicable [in the latter case]. And that, impermissibly, would mean that every defendant to whose case it was relevant, no matter how remote in time and merit, would become its beneficiary” {id. at 222).
Although a court’s failure to advise a pleading defendant of the PRS component constitutes a due process violation, it cannot be said that the purpose of the Catu rule—automatic vacatur—has any bearing on the defendant’s guilt or innocence. It is highly unlikely that defendants who pleaded guilty to criminal offenses that required determinate sentences but did not have PRS pronounced pleaded guilty to crimes that they did not commit. Thus, while PRS is certainly an important component of a sentence, a court’s failure to inform a defendant of that component is not likely to result in the conviction of an innocent person.
Nor do the second and third factors weigh in favor of retroactivity. Prior to these particular appeals, prosecutors, defense counsel and courts had relied extensively on the legitimacy of pre-Catu predicate felony convictions for enhancement purposes where PRS had not been pronounced. Moreover, retroactive application of Catu would do little to advance the administration of justice as it would render useless prior predicate convictions as a result of a sentencing error that bore no relationship to the defendant’s guilt or innocence. The legislature, in an attempt to remedy the Catu errors committed between September 1, 1998 and June 30, 2008, enacted Penal Law § 70.85, which granted the court, with the consent of the district attorney, the authority to reimpose the original determinate sentence without any term of PRS (see Penal Law § 70.85; L 2008, ch 141, § 2). This essentially created an exception to Penal Law § 70.45’s requirement that a PRS component be added to all determinate sentences, such that a sentence pronounced without PRS under Penal Law § 70.85 nonetheless constitutes a legal sentence.
*211 Finally, in addition to the statutory avenues of relief that have been enacted to assist a defendant in rectifying Catu errors, our case law permits a defendant to raise an unpreserved Catu error on direct appeal (see People v Louree, 8 NY3d 541, 545-546 n [2007] [also holding that a defendant may not raise a Catu objection by way of a CPL article 440 proceeding]). Moreover, we have held that because there is little distinction between a Catu claim and a challenge to the adequacy of a plea allocution, “[i]n the absence of justification for a defendant’s failure to pursue [that] issue in a direct appeal . . . , [a Catu] claim may not be raised in a CPL 440.10 motion” (People v Stewart, 16 NY3d 839, 841 [2011]). Based on the foregoing, the application of the Pepper test does not favor state retroac-tivity.
V.
Conclusion
In People v Smith, the Appellate Division erred in holding that Catu applies retroactively to pr e-Catu convictions. Accordingly, the Appellate Division order should be reversed, the resentence vacated and the original sentence reinstated.
In People v Fagan, the Appellate Division likewise erred in determining that defendant Fagan was entitled to challenge his pr e-Catu predicate conviction on the ground that Catu applied retroactively. Accordingly, the Appellate Division order should be reversed, the resentence vacated and the original sentence reinstated.

. Notably, it was not until 2008 that the legislature amended Penal Law § 70.45 (1) to require that “[w]hen a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of [PRS] as determined pursuant to this article” (L 2008, ch 141, § 3).

. Although the sentencing minutes are not in the record, the parties agree that there is no indication that defendant was apprised of PRS at *197 sentencing. Notably, defendant’s commitment sheet did not contain any reference to PRS.

. Defendant’s notice of appeal is not contained in the record.

. This provision was enacted in response to onr decisions in Garner and Sparber, and facilitated a review by sentencing courts of all cases between September 1, 1998 and June 30, 2008 where the PRS term was not specified in the commitment order.

. Defendant filed a timely notice of appeal, which was eventually withdrawn by stipulation of the parties. The sole issue raised was whether defendant was required to register pursuant to New York City’s Gun Offender Registration Act.

. This provision states, as relevant here, that a prior conviction “which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States must not be counted in determining whether the defendant has been subjected to a predicate violent felony conviction.”

. The minutes to the plea proceeding have been lost, but the parties agree that defendant had not been apprised of PRS.

. We recognize that defendant Smith’s direct appeal from the 2002 conviction is not technically “final” because he has not perfected that appeal, and there is no indication from the record that the People moved to dismiss that appeal. Defendant Smith has not provided any excuse as to why he has not pursued his direct appeal. As it stands, the direct appeal has remained stagnant for more than a decade. Because of the procedural posture of this particular appeal, i.e., defendant Smith made a postconviction motion attacking his predicate conviction based on a Catu error, we will consider defendant’s appeal as one involving a collateral attack.

. This provision is substantially similar in language to CPL 400.15 (7) (b).

. In People v Goss (286 AD2d 180 [3d Dept 2001]), the Third Department held that a defendant was entitled to withdraw his plea prior to sentencing because he had not been advised of the PRS component (see id. at 184). Notably, however, the Goss court addressed (but rejected) the People’s argument that County Court’s failure to advise him of the PRS component was harmless (see id.).

. Notably, the federal standard requires a defendant to demonstrate that the court’s error during the plea proceeding affected the defendant’s decision to accept the plea (see United States v Westcott, 159 F3d 107, 112-113 [2d Cir 1998], cert denied 525 US 1084 [1999]; Caputo v Henderson, 541 F2d 979, 984 [2d Cir 1976]).

. In light of this assumption, we need not address the People’s argument that our holding in People v Pignataro (22 NY3d 381 [2013]) established that a Catu error constitutes only a violation of the State Constitution, thereby taking it out of the realm of CPL 400.15 (7) (b).

. In contrast, an “old rule” is one that applies a well-established constitutional principle to a new circumstance, and, as such, is always retroactive (Yates v Aiken, 484 US 211, 216 [1988]; People v Eastman, 85 NY2d 265, 275 [1995]).

. The other exception, not applicable here, is when the new rule “placets] certain kinds of primary individual conduct beyond the power of the States to proscribe” (People v Baret, 23 NY3d 777, 791 [2014], quoting Danforth v Minnesota, 552 US 264, 266 [2008]).