People v A.P. (2025 NY Slip Op 25280)

[*1]

People v A.P.

2025 NY Slip Op 25280

Decided on December 23, 2025

Supreme Court, Bronx County

Bowen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 23, 2025
Supreme Court, Bronx County

The People of the State of New York

againstA.P., Defendant.

Ind. No. 000316-18

Mary McGarvey-DePuy, Assistant District Attorney, Bronx County, for the People 
Paris DeYoung, The Legal Aid Society, for Defendant

E. Deronn Bowen, J.

Summary
The defense application for vacatur of the judgment of conviction and resentencing consideration under the Domestic Violence Survivors Justice Act is DENIED.
 I. BackgroundOn the evening of December 9, 2017, 61-year-old Calixto Palacio López (decedent) was fatally stabbed inside of his Bronx County home. Subsequent investigation led the police to Shamika Mosley, the codefendant and mother of defendant, A.P. The codefendant gave a statement that her then-14-year-old son "stabbed someone up." NYPD homicide detectives interviewed defendant on February 2, 2018. In a recorded statement, defendant admitted that he and his codefendant mother went to the decedent's apartment that evening with the intent to rob him. According to defendant, after the codefendant knocked on the apartment door and the decedent opened it, defendant forced his way into the apartment. The decedent began to scream, and the codefendant told defendant to "shut him up." In compliance with his mother's command, defendant stabbed the decedent three or four times in the lower body with a knife that he had brought with him. The codefendant also stabbed the decedent another three or four times in the chest area using a knife that she retrieved from the decedent's kitchen. Defendant and his mother then left the apartment. Defendant returned alone the next day to retrieve both knives, wrap them [*2]in black plastic bags and bury them in a park.
On February 4, 2020, defendant was convicted, upon a guilty plea, of manslaughter in the first degree (Penal Law § 125.20 [1]). On March 4, 2020, pursuant to the plea agreement and the juvenile offender sentencing statute, a negotiated sentence of 3⅓-to-10 years' incarceration was imposed (Denis Boyle, J.) (see Penal Law §§ 10.00 [18] [2]; 70.05).

II. The 440.20 Motion
By motion dated June 26, 2025, made pursuant to CPL 440.20, defendant protests that at the time of sentencing he was not considered for alternative sentencing under the Domestic Violence Survivors Justice Act (DVSJA) (see Penal Law § 60.12). Defendant notes correctly that, had he been found to qualify for DVSJA alternative sentencing, he "could be sentenced to (1) a determinate sentence between 1 and 5 years' imprisonment followed by 2 ½ to 5 years' post-release supervision, (2) an alternative definite sentence of up to 1 year, or (3) a probationary term of 3, 4, or 5 years" (see Penal Law §§ 60.12 [2] [a]; 65.00 [3] [a] [i]; 70.45 [2] [f]). Defendant complains, first, that the DVSJA is age discriminatory against juvenile offenders, like himself, because, by its express terms, access to the alternative sentencing scheme is limited to defendants who would otherwise be sentenced under select adult felony sentencing statutes (see Penal Law §§ 60.12 [1]; 70.00, 70.02, 70.06, 70.71 [2], [3]). This, defendant asserts, is a state equal protection violation (see NY Const, art I, § 6).
Alternatively, defendant argues that legislative history reveals the Legislature's intent that DVSJA alternative sentencing be available to qualifying juveniles despite express statutory language that commands otherwise. Defendant contends that, in enacting the DVSJA, the Legislature recognized that
"New York State has a responsibility to preserve the human right to live free from violence and provide support for domestic violence survivors, a responsibility that does not end when a survivor becomes involved in the criminal justice system because of the abuse . . . he suffers. In seeking to protect this right and remedy New York's long-held and unjust practice of imposing long and unfair prison sentences on survivors of domestic violence whose crimes are linked to their histories of abuse, the Legislature passed the DVSJA, a groundbreaking statute that empowers judges to consider those histories in fashioning appropriate sentences" (internal quotation marks and brackets omitted).Defendant submits that the express statutory limitation of DVSJA alternative sentencing to adult defendants was an unintended "drafting oversight."
"As the result of a drafting oversight, the DVSJA excludes juvenile offenders, sentenced pursuant to P.L. § 70.05, from seeking sentencing relief under P.L. § 60.12. Because this exclusion was both unintentional and runs afoul of the Legislature's stated aims in passing the statute, and because [defendant] was otherwise plainly eligible for DVSJA consideration, the statute violates [defendant's] equal protection rights under both the United States and New York State Constitutions."The People oppose the 440.20 motion in responsive papers dated October 6, 2025.

 III. Analysis
"At any time after the entry of a judgment, the court in which the judgment was entered may, upon motion of the defendant, set aside the sentence upon the ground that it was [*3]unauthorized, illegally imposed or otherwise invalid as a matter of law" (CPL 440.20 [1]). Consequently, "by its plain language, CPL [ ] 440.20 is a statute that only involves the legality of a sentence at the time it was pronounced" (People v White, 69 Misc 3d 425, 434 [Sup Ct, NY County 2020]; see People v Catalonotte, 72 NY2d 641, 645 [1988] ["the validity of the conviction shall be determined as of the time it was entered"]; People v Shilman, 85 Misc 3d 408, 410 [Sup Ct, Bronx County 2024] ["CPL 440.20 is a vehicle post-conviction to set aside a sentence. This provision does not provide a basis to vacate a conviction, reduce a plea, and order a new sentence"]). CPL 440.20 is not a catch-all mechanism for constitutional collateral challenges to sentencing statutes. Nor may CPL 440.20 be used to move for a more lenient sentence based upon later policy, legal or other changes, e.g., if, as defendant claims here, "the statute employs a suspect classification under the newly-amended New York State Constitution" (see People v Smith, 28 NY3d 191, 203 [2016] ["a conviction or sentence does not become unconstitutional merely because the law has changed subsequent to the defendant's direct appeal of that conviction"] [internal quotation marks omitted]).
Defendant, rightly does not contest that, as he was 14 years of age at the time of the criminal act, the juvenile offender sentencing statute was the legislatively designed and designated framework for determining his sentence upon conviction. Defendant also rightly does not claim that the sentence handed down was outside of the permissible bounds of that statutory framework. In other words, defendant concedes that it is not the case here that his "sentence . . . was unauthorized, illegally imposed or otherwise invalid as a matter of law" (CPL 440.20 [1]). Defendant cannot cloak under CPL 440.20 a constitutional equal protection claim due to his exclusion from alternative sentencing consideration under a different statute. Such argument is simply beyond the scope of statutorily permissible legal argument under CPL 440.20. Accordingly, the equal protection prong of defendant's CPL 440.20 is DENIED for this procedural reason.
Defendant's alternative averment—that the availability of DVSJA sentencing to adult offenders, but not to juveniles, was an "inadvertent omission" and that the State Legislature's actual intent was to permit DVSJA consideration for juveniles—is unavailing. There is a legal "presumption that the legislature has investigated for and found facts necessary to support the legislation. While courts may look to the record relied on by the legislature, even in the absence of such a record, factual support for the legislation would be assumed by the courts to exist" (White v Cuomo, 38 NY3d 209, 217 [2022] [internal citation and quotation marks omitted]). Consequently, the court declines to blindly presume that the DVSJA-qualifying language was the result of legislative drafting incompetence.
It is well established that, "with any question of statutory interpretation, our task is to ascertain and give effect to the intention of the legislature" (People ex rel. Ellis v Imperati, — NY3d —, 2025 NY Slip Op 03646, *3 [2025]). Respecting juvenile sentencing, "most saliently, the legislature must have recognized that an individual's youthfulness should be considered for purposes of sentencing, otherwise it would not have specifically created a 'juvenile offender' designation" (People v Aponte, 42 Misc 3d 868, 871 [Sup Ct, Bronx County 2013]). From the enactment of the Juvenile Offender Act of 1978 (JOA) through the recent Raise the Age reforms of 2017, the State Legislature has demonstrated a clear and consistent intent that the sentencing schemes for juvenile and adult offenders be kept distinct, as reflected in the Penal Law sentencing scheme. Even during the JOA's infancy nearly half a century ago, juvenile offender sentencing was already judicially recognized as granting a host of benefits intended specifically [*4]and only for juvenile offenders. The legislative intent behind the creation of the juvenile sentencing scheme justified then, as now, the sometimes harsher, outlier outcomes that may result than had the juvenile been sentenced under a separate statute outside of the JOA.
"The Legislature has not acted arbitrarily or capriciously in establishing the juvenile offender category [for 13-, 14- and 15-year olds]. While the potential punishment may, in some instances, be more severe than that imposed upon sixteen, seventeen, or eighteen year old [sic] defendants in that youthful offender status is unavailable, there are also ameliorative provisions in this legislation which are designed to protect the juvenile. There are provisions in the challenged legislation which provide for removal of the case to the Family Court under certain conditions. In addition, the Legislature has provided that juvenile offenders are to be confined in separate facilities.It is clear, therefore, that the Legislature enacted a body of law specifically tailored to juvenile offenders. Certain aspects of the legislation provide benefits to the juvenile offender which are not available to other groups. Furthermore, the juvenile offender possesses all of the basic rights available to the adult offender such as preliminary proceedings, bail and counsel" (People v Mason, 99 Misc 2d 583, 587-588 [Sup Ct, Richmond County 1979]; see People v Hudson, 232 AD3d 200 [2024] ["nothing in the plain language of Penal Law § 60.12, or the purpose and policy goals of the Legislature in enacting the statute, leads this Court to conclude that a DVSJA hearing is in the category of rights which may not be waived"]; People v B.N., 79 Misc 3d 740, 756 [Sup Ct, Cayuga County 2023] ["the legislature intended that the DVSJA would only apply to a very small pool of eligible applicants"]; cf. People v Thomas, 33 NY3d 1, 5 [2019] ["We reject this strained interpretation of the predicate felony statutes, because it defies the express language, and would defeat the purpose, of those statutes"]).The court accords with the reasoning of the Mason court and declines the defense invitation to deem juvenile offenders eligible for DVSJA sentencing consideration in the absence of any indication that the Legislature intended that result. To grant defendant's application would be to judicially mandate the commingling of the adult and juvenile sentencing statutes, in contravention of that clear, longstanding legislative intent.
In conclusion, the CPL 440.20 application for sentence vacatur and consideration for resentencing under the DVSJA is DENIED in its entirety. The equal protection argument is rejected on procedural grounds. The legislative intent argument is rejected as unavailing on the merits.
The court does wish to register its sympathy to defendant's position, as presented in the motion papers. Where, purportedly, a 14-year old (1) assisted his mother with a planned robbery, (2) carried a weapon, (3) stabbed an elderly man alongside his mother upon her order, and (4) returned alone to an apartment with a deceased body inside to retrieve and hide the weapons, the court would not be surprised to learn that abuse and trauma of the DVSJA variety were attendant with the mother/son relationship. The court's denial of the CPL 440.20 motion is in no way meant to diminish the importance of defendant's experiences or the policy debate he raises. It simply reflects the procedural constraints placed upon the court's consideration of a CPL 440.20 application. The constraints make clear that a "trial-level court has no authority under CPL 440.20 to reduce a valid sentence in the interest of justice" (People v Jogie, 118 AD3d 1025, 1026 [2014]). Whether alternative sentencing guidelines should be developed for juvenile [*5]survivors of domestic abuse is a call to be made by the appropriate elected representatives of the New York State legislative and executive branches, not the court (cf. Hurubie Meko, Top Judge Favors a Second Chance for Those Languishing in Prison, NY Times, Feb. 10, 2025 ["The chief judge of New York State's highest court urged the State Legislature on Monday to pass a bill that would allow prisoners who have been locked up for years to apply for reduced sentences"], available at https://www.nytimes.com/2025/02/10/nyregion/second-look-prison-ny-judge-wilson.html [last accessed Dec. 22, 2025]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
Dated: December 23, 2025Bronx, New YorkE. Deronn Bowen, A.J.S.C.